

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-10-1995

# Spence v Straw

Precedential or Non-Precedential:

Docket 94-1866

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Spence v Straw" (1995). *1995 Decisions.* Paper 130.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/130

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 94-1866 and 94-1916

_____


KEVIN SPENCE

                    Appellant,

          vs.

EDWARD STRAW, ADMIRAL, Director of the
DEFENSE LOGISTICS AGENCY of the U.S.
Department of Defense

                    Appellee.



_____



APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. Civil No. 92-cv-03713)

_____



Submitted Under Third Circuit LAR 34.1(a)
March 27, 1995

BEFORE:  MANSMANN, COWEN and LEWIS, Circuit Judges.

(Filed  May 10, 1995)

_____

Alan B. Epstein
Jablon, Epstein, Wolf & Drucker
The Bellevue
Broad Street at Walnut
Ninth Floor
Philadelphia, PA  19103

        Attorney for Appellant


Richard Mentzinger, Jr.
Karen E. Rompala
Office of the United States Attorney
Suite 1250
615 Chestnut Street
Philadelphia, PA  19106

        Attorneys for Appellee


_____

OPINION OF THE COURT
_____


LEWIS, Circuit Judge.

        In this case we are required to evaluate whether a party suing under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, is required to exhaust administrative remedies provided in Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16, and whether suit under the Rehabilitation Act -- with prior exhaustion of remedies -- is the exclusive means by which a plaintiff may raise claims against federal agencies relating to handicap discrimination.  Concluding that the answer to both of these questions is yes, we will affirm the district court in most respects, while modifying the court's judgment to conform to our analysis.

I.

Because this case comes to us upon grant of a motion to dismiss, we accept all of the plaintiff's well-pleaded facts as true. Bogosian v. Gulf Oil Corp., 561 F.2d 434 (3d Cir. 1977). According to the recitations in the amended complaint, the following facts comprise this dispute.

In early 1992, Kevin Spence applied to the Defense Logistics Agency of the Department of Defense ("DLA") for the position of "Sewing Machine Operator (Single Needle)." He passed the DLA's competency examination with a score of 85. The DLA promptly provided Spence with a Notice of Rating, which confirmed his score and declared him eligible for the sewing machine operator position. On April 23, 1992 Spence passed the physical examination required for hire. After passing another performance examination on June 2, 1992, Spence was notified by the DLA that he had "been tentatively selected for a permanent position of Sewing Machine Operator, W-3."

However, on June 24, 1992 Spence was required to take an eye examination, and he failed. The test showed that his approximate vision in both eyes was 20/50, and the DLA required sewing machine operators to have at least 20/20 vision in one eye and 20/40 in the other. Because he had failed the eye examination, Spence was informed that the DLA had rescinded his selection as a sewing machine operator.

Spence filed a pro se complaint against the DLA in June 1992. The DLA moved to dismiss that complaint, but that motion was denied because the DLA had not served counsel which had been

appointed to assist Spence.  When a second motion to dismiss was properly filed and served, the pro se complaint was dismissed without prejudice in March 1994 on the ground that it did not with specificity set forth a cause of action under the Rehabilitation Act.  The district court noted, however, that new counsel had recently been appointed for Spence, and that it was likely that this counsel would be able to set forth Spence's concerns in a manner providing adequate notice to the DLA of the nature of plaintiff's claims.  Thus, Spence's new counsel was allowed 30 days to file an amended complaint.

This was done.  In the amended complaint, from which our factual recitation is gleaned, Spence sued Admiral Edward Straw ("Straw"), Director of the DLA, in his official and individual capacities, premising jurisdiction upon 28 U.S.C. § 1331.  Having provided the factual allegations described above, Spence contended in his amended complaint that those facts stated two causes of action.  Count One alleged that Spence was a handicapped individual as defined under section 504 of the Rehabilitation Act and that he was denied employment as a sewing machine operator solely because of his slight vision handicap. Spence contended that the DLA's vision requirements were not reasonably related to the sewing machine operator position, and that even if they were, Spence could perform the job with a slight and reasonable accommodation on the part of the DLA, which would not unduly burden that agency.  By failing to hire Spence because of his handicap, Spence contended, the DLA had violated section 504.

Count Two of the amended complaint alleged that the DLA denied Spence equal protection under the Due Process Clause of the Fifth Amendment by singling him out and unnecessarily differentiating him because of his vision handicap. Furthermore, Spence contended, the DLA's actions were arbitrary and irrational, because Spence had passed the requisite performance test showing that he could perform the job of sewing machine operator.

Straw filed a motion for summary judgment upon and dismissal of the amended complaint on two grounds: (1) Spence failed to exhaust administrative remedies on his claim in Count One under section 504 of the Rehabilitation Act prior to filing suit, and the amended complaint is now time-barred; and (2) Spence's constitutional claim in Count Two should be dismissed because the Rehabilitation Act provides exclusive, preemptive remedies for a plaintiff pursuing handicap discrimination claims. The district court agreed, and in a memorandum and order filed in August 1994, the district court granted Straw's motion to dismiss the amended complaint with prejudice (and dismissing the motion for summary judgment as moot). Spence timely appealed, and we have jurisdiction of the district court's final order under 28 U.S.C. § 1291.

II.

We exercise plenary review over a district court's dismissal of a complaint for failure to state a claim upon which relief can be granted. Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993). Accepting as true all well-pleaded facts in the plaintiff's complaint (D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364, 1367 (3d Cir. 1992)), the relevant inquiry is whether under any reasonable interpretation of those allegations the plaintiff may be entitled to relief (Holder v. City of Allentown, 987 F.2d 188, 193 (3d Cir. 1993)). We apply this standard to both of the district court's central holdings below, first discussing exhaustion of remedies prior to suing for violation of section 504, and then turning to the question of whether the Rehabilitation Act provides the exclusive means of raising allegations of discrimination on the basis of handicap by federal agencies.

A.

1.

Congress passed the Rehabilitation Act of 1973 in part "to promote and expand employment opportunities in the public and private sectors for handicapped individuals and to place such individuals in employment." 29 U.S.C. § 701(8) (1976). The Rehabilitation Act approached this goal in a number of ways, but one strategy focused on prohibiting discrimination against the handicapped by the federal government, federal contractors and other recipients of federal funds.

As originally drafted the Rehabilitation Act required federal agencies to submit affirmative action plans for handicapped individuals (section 501(b), codified at 29 U.S.C. § 791(b)), required federal contractors to include in their contracts provisions mandating that the contractor would take affirmative action to employ qualified handicapped individuals (section 503, codified at 29 U.S.C. § 793), and stated with respect to recipients of federal funds that "[n]o otherwise qualified handicapped individual . . . shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance" (section 504, codified at 29 U.S.C. § 794). However, as originally drafted the Rehabilitation Act did not explicitly permit handicapped individuals to bring claims for violations of its provisions.

Congress filled this gap in 1978, with the Senate and House adding different language to what became the Rehabilitation Act amendments of that year. See Prewitt v. United States Postal Service, 662 F.2d 292, 301-04 (5th Cir. 1981) (discussing 1978 amendment process in detail). The Senate's contribution focused on provision of a new section in the Rehabilitation Act -- section 505, codified at 29 U.S.C. § 794a. That provision stated in section 505(a)(1) that

> [t]he remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16) [Title VII], including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e-5(f) through (k)), shall be available with respect to any complaint under [29 U.S.C.] section 791

>           [Rehabilitation Act section 501] of this
>           title . . . .

Section 505(a)(1), codified at 29 U.S.C. § 794a(a)(1).

Section 505(a)(2), in turn, provided a private cause of

action for handicapped individuals against providers and

recipients of federal assistance, stating:

>           The remedies, procedures, and rights set
>           forth in Title VI of the Civil Rights Act of
>           1964 [42 U.S.C. §2000d et seq.] shall be
>           available to any person aggrieved by any act
>           or failure to act by any recipient of Federal
>           assistance or Federal provider of such
>           assistance under [29 U.S.C.] section 794 of
>           this title [Rehabilitation Act section 504].

Section 505(a)(2), codified at 29 U.S.C. § 794a(a)(2).

At the same time the Senate was focusing on new section

505, the House "extended section 504's proscription against

handicap discrimination to `any program or activity conducted by

an Executive agency or by the United States Postal Service

. . . '" Prewitt, 662 F.2d at 302.  In short,

>           by its 1978 amendments to the Rehabilitation
>           Act, Congress clearly recognized both in
>           section 501 and in section 504 that
>           individuals now have a private cause of
>           action to obtain relief for handicap
>           discrimination on the part of the federal
>           government and its agencies.  The amendments
>           to section 504 were simply the House's answer
>           to the same problem that the Senate saw fit
>           to resolve by strengthening section 501 [by
>           adding section 505].  The joint House-Senate
>           conference committee could have chosen to
>           eliminate the partial overlap between the two
>           provisions, but instead the conference
>           committee, and subsequently Congress as a
>           whole, chose to pass both provisions, despite
>           the overlap.

Id. at 304.

Because of the less than artful manner in which Congress amended the Rehabilitation Act, the statutory provisions produce an apparently incongruent enforcement scheme. Federal agencies may, by the terms of the Rehabilitation Act, be sued for violation of either section 501 or 504 of the Act. If a party sues a federal agency for violation of section 501 by pursuing a claim under section 505(a)(1), Title VII remedies are "available." 29 U.S.C. § 794a(a)(1). Under Title VII, the remedies available include any remedies for discrimination provided by the federal agency itself. 42 U.S.C. § 2000e-16(c). The Supreme Court has explained that when Title VII remedies are available, they must be exhausted before a plaintiff may file suit. And although section 505(a)(1) states only that Title VII remedies are "available" when one complains of a violation of section 501, "the legislative history leaves no doubt that Congress meant to require exhaustion of administrative remedies [in such cases] just as in ordinary Title VII actions." McGuinness v. United States Postal Service, 744 F.2d 1318, 1320 (7th Cir. 1984), citing S.Rep. No. 890, 95th Cong., 2d Sess. 18-19 (1978); 124 Cong. Rec. 30578 (1978) (remarks of Senator Cranston); and Prewitt, 662 F.2d at 303-04. Thus, a party is barred from suing a federal agency for violation of section 501 if he or she has failed to exhaust administrative remedies under Title VII.

However, an aggrieved party may also sue a federal agency for violation of section 504 -- which Congress amended in 1978 to prohibit discrimination by federal agencies -- by

pursuing a claim under section 505(a)(2).  Section 505(a)(2), however, states that the "remedies, procedures, and rights of Title VI" -- and not Title VII -- are available.  29 U.S.C. § 794a(a)(2) (emphasis added).

Spence argues that since he sued the DLA for violation of section 504, Title VII remedies were not available to him and need not have been exhausted.  Appellant's Br. 11-12.  Furthermore, he correctly notes that although we have not directly ruled on the issue of whether Title VI remedies must be exhausted before suit may be brought to enforce section 504, we have ruled that exhaustion of remedies is not required when a claim is brought pursuant to Title VI.  Id. 12, citing Chowdhury v. Redding Hospital & Medical Center, 677 F.2d 317 (3d Cir. 1982).  Thus, Spence concludes, he did not have to exhaust any administrative remedies before filing suit.

However, we reject Spence's analysis, having been particularly persuaded by Judge Posner's lucid statutory construction of the Rehabilitation Act in McGuinness, a case closely analogous to the one before us.  In McGuinness, an applicant for a job as a postman with the Milwaukee office of the United States Postal Service was rejected on the ground that his flat feet and hammer toes rendered him physically unfit for the job.  He appealed his rejection to the general manager of the Postal Service's employee relations division, but when he was told by the general manager that the decision was final, he did not "take the next step open to him, which would have been to consult with the Postal Service's equal employment opportunity

counselor, followed (if necessary) by the filing of a formal complaint."  McGuinness, 744 F.2d at 1320.

Instead, McGuinness sued the Postal Service, seeking damages and the next available postman vacancy.  The district court dismissed McGuinness's complaint and, significantly, refused to permit him to amend the complaint to state a claim under section 505(a)(1) because he had failed to exhaust his administrative remedies.  On appeal, the Seventh Circuit affirmed the district court's dismissal, modifying it only to make clear that dismissal was without prejudice to McGuinness "bringing a new suit if and when he exhausts his administrative remedies."  McGuinness, 744 F.2d at 1321.

McGuinness argued that he did not have to exhaust administrative remedies because his suit was being asserted under section 504, rather than 505(a)(1).  However, the court of appeals rejected that contention in language that is applicable here:

> Although section 504 has been held applicable to employment discrimination as well as other forms of discrimination against the handicapped by recipients of federal money . . . it is unlikely that Congress, having specifically addressed employment of the handicapped by federal agencies (as distinct from employment by recipients, themselves nonfederal, of federal money) in section 501, would have done so again a few sections later in section 504.  Moreover, as McGuinness himself is quick to point out, section 505 does not make Title VII remedies available to people complaining of a violation of section 504; instead, in subsection (a)(2), it makes Title VI remedies available to them.  McGuinness made no attempt to exhaust Title VI remedies either.  Now it is true that he

probably would not have been required to do so even if section 504 were applicable to his claim. Title VI remedies -- which involve things like cutting off federal funds to the discriminator -- are not designed to help individuals . . . . But that is beside the point. The point is that it would make no sense for Congress to provide (and in the very same section -- 505(a)) different sets of remedies, having different exhaustion requirements, for the same wrong committed by the same employer; and there is no indication that Congress wanted to do this -- as of course it could do regardless of what might seem sensible to us -- when it added section 505 in 1978.

McGuinness, 744 F.2d at 1321 (citations omitted). The Seventh Circuit concluded that either an individual should not be permitted to sue a federal agency under section 504, or alternatively that an individual asserting a claim based upon section 504 must first exhaust Title VII remedies. Id. at 1321-22.

We note that although our sister circuits have not been entirely consistent in the manner in which they have reached the ultimate result, the Seventh Circuit's resolution of the exhaustion issue in McGuinness is consistent with other courts of appeals that have faced the question of whether a plaintiff must exhaust Title VII remedies before bringing suit under section 504. One court of appeals has explicitly ruled that an individual may sue a federal agency or the Postal Service only under sections 501 and 505(a)(1). See Boyd v. United States Postal Service, 752 F.2d 410, 413 (9th Cir. 1985). Other courts of appeals have found that if a litigant sues a federal agency

under sections 504 and 505(a)(2), he or she must satisfy Title VII remedies so as not to evade the remedial scheme developed by Congress in the Rehabilitation Act.  Prewitt v. United States Postal Service, 662 F.2d 292 (5th Cir. 1981); Smith v. United States Postal Service, 742 F.2d 257 (6th Cir. 1984); Morgan v. United States Postal Service, 798 F.2d 1162, 1164-65 (8th Cir. 1986); Doe v. Garrett, 903 F.2d 1455 (11th Cir. 1990).  Finally, in Milbert v. Koop, 830 F.2d 354 (D.C. Cir. 1987), the District of Columbia Circuit determined that it need not decide whether suits by individuals under sections 504 and 505(a)(2) are barred, but noted that courts that had allowed suits under those provisions had required exhaustion of Title VII remedies prior to suit, and strongly suggested plaintiffs suing federal agencies for handicap discrimination in the future "seek relief under section 501 rather than under section 504."  Id. at 357.  After examination of this case law, and adopting Judge Posner's analysis in McGuinness, we conclude that a plaintiff must exhaust Title VII remedies before bringing suit under sections 504 and 505(a)(2) of the Rehabilitation Act, just as he or she must before suing under sections 501 and 505(a)(1) of the Act.[1]

_____

[1].     Spence relies principally upon three cases:  Camenisch v. University of Texas, 616 F.2d 127 (5th Cir. 1980), vacated on other grounds, 451 U.S. 390 (1981), Pushkin v. Regents of University of Colorado, 658 F.2d 1372 (10th Cir. 1981), and Greater Los Angeles Council on Deafness, Inc. v. Community Television of Southern California, 719 F.2d 1017 (9th Cir. 1983). However, those cases are distinguishable:  in each of those cases the defendant contended only that Title VI remedies had to be exhausted.  Camenisch, 616 F.2d at 133-36; Pushkin, 658 F.2d at 1381-82; Greater Los Angeles Council on Deafness, 719 F.2d at 1021; see also Smith v. Barton, 914 F.2d 1330 (9th Cir. 1990) (stating that since "administrative remedies" under section 504

2.

The DLA argued to the district court that under the regulations governing the filing of discrimination complaints with the DLA, Spence had 45 days from the date of the alleged discrimination in which to contact an Equal Employment Opportunity counselor at the DLA.  Joint Appendix ("J.A.") 67, citing 29 C.F.R. § 1614.105(a)(1).  The agency further noted that Spence could have sought an extension of the 45 day period

(..continued)
result only in "suspension or termination of the federal assistance to the institutional recipient" (i.e., Title VII), exhaustion is not required).  There was no indication, therefore, that any of those courts addressed the applicability or relevance of Title VII remedies.  Furthermore, we note that the Fifth Circuit subsequently limited its Camenisch holding to suits involving claims against federal grantees -- in suits against federal agencies under the Rehabilitation Act, parties are required to exhaust their Title VII remedies.  Prewitt v. United States Postal Service, 662 F.2d 311, 314 (5th Cir. 1981).  And as explained in the text, in Boyd v. United States Postal Service, 752 F.2d 410 (9th Cir. 1985), the Ninth Circuit found that individuals may sue federal agencies only under sections 501 and 505(a)(1) of the Rehabilitation Act, undercutting Spence's reliance upon Greater Los Angeles Council on Deafness.

Spence also argues that our decisions in Chowdhury v. Redding Hospital & Medical Center, 677 F.2d 317 (3d Cir. 1982), and Cheyney State College Faculty v. Hufstedler, 703 F.2d 732 (3d Cir. 1983), suggest that exhaustion of administrative remedies is not required prior to filing suit under sections 504 and 505(a)(2).  We disagree.  Chowdhury and Cheyney State College Faculty stand for the proposition that a party need not exhaust Title VI remedies before filing a suit claiming a violation of that statute.  Although in Chowdhury we drew support for our conclusion that exhaustion is not required under Title VI from cases construing section 504 of the Rehabilitation Act (Chowdhury, 677 F.2d at 322), neither Chowdhury nor Cheyney State College Faculty involved a claim under the Rehabilitation Act, thus neither case discussed whether a litigant pursuing a claim under sections 504 and 505(a)(2) has any duty to exhaust Title VII remedies.  We decline to turn obiter dictum in Chowdhury into a holding here.

pursuant to 29 C.F.R. § 1614.105(2), which permits an agency to extend the 45-day time limit of subsection (a)(1) of the regulation

> when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known [sic] that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency . . . ."

29 C.F.R. § 1614.105(2). The DLA contended that since it was undisputed that the alleged discriminatory act had occurred back in 1992 and that Spence had not exhausted his Title VII remedies, the 45-day time limit had run on his ability to pursue those remedies, such administrative action was now barred, and his amended complaint should therefore be dismissed with prejudice as untimely.[2]

The district court dismissed Spence's section 504 claim for failure to exhaust administrative remedies, but failed to note whether that dismissal was with or without prejudice. We believe that the complaint should be dismissed as premature, rather than untimely, and without prejudice to Spence's potential to file suit again upon exhaustion of administrative remedies. We note that the regulations cited by the DLA state that the

---

[2]. On appeal, the DLA does not state whether it continues to maintain that Spence's claims are time-barred -- or potentially premature.

agency may decide to accept an otherwise untimely administrative complaint "for other reasons considered sufficient by the agency." 29 C.F.R. § 1614.105(a)(1). Although we are skeptical whether the DLA will consider Spence's possible argument that he did not know that he had to exhaust Title VII remedies before suing under sections 504 and 505(a)(2) "sufficient reason" to extend the 45-day deadline, that issue is for the DLA to determine in the first instance. Cf. McGuinness, 744 F.2d at 1320-21 (interpreting similar provision in 29 C.F.R. § 1613.214(a)(4), and clarifying that dismissal in that case was "without prejudice to [McGuinness] bringing a new suit if and when he exhausts his administrative remedies"). Thus, we will clarify the district court's order dismissing this action to note that Spence may maintain another suit if he pursues his Title VII remedies, the DLA excuses his failure to file the complaint during the 45 days following the alleged discriminatory act, and he exhausts the relevant procedures. We offer no view as to the appropriate outcome; instead, we emphasize that this is a matter for the DLA, not us, to determine.

B.

The district court dismissed Spence's claim that the DLA denied Spence equal protection under the Due Process Clause of the Fifth Amendment (and that the DLA's actions were arbitrary and irrational) on the ground that the Rehabilitation Act provides the exclusive means by which a litigant may raise claims of discrimination on the basis of handicap by federal agencies.

Spence challenges that holding, as well, but we agree with the district court's conclusion.

Given that we have found that a litigant must exhaust administrative remedies under Title VII before filing suit against a federal agency alleging discrimination on the basis of handicap under sections 504 and 505(a)(2) of the Rehabilitation Act, it would be anomalous to permit a litigant to avoid that remedial scheme by simply asserting an independent constitutional claim premised upon the same facts.  As the Seventh Circuit explained in McGuinness in rejecting a similar claim under the Fifth Amendment, "[A]ny effort to avoid sections 505's requirement of exhausting administrative remedies by challenging the same conduct under another provision of law must fail because it would `allow [Congress's] careful and thorough remedial scheme to be circumvented by artful pleading.'"  McGuinness, 744 F.2d at 1322, quoting Brown v. General Services Administration, 425 U.S. 820, 833 (1976).[3]  Thus, although a litigant may raise claims such as those asserted by Spence in a suit following exhaustion of Title VII remedies, he or she may not do so without first pursuing those remedies.

---

[3].    Courts have held that section 504 does not prevent a litigant from asserting a separate theory that is not simply a disguised handicap discrimination claim.  E.g., Smith v. Barton, 914 F.2d 1330, 1334 (9th Cir. 1990) (Rehabilitation Act does not bar a claim under 42 U.S.C. § 1983 based on alleged violations of a First Amendment right to association, since plaintiffs "allege violations that are unrelated to issues of handicap discrimination").  While we do not foreclose that possibility, we find that Spence's due process/equal protection argument is essentially identical to his argument under the Rehabilitation Act, and therefore is barred absent prior exhaustion of Title VII remedies.

                                III.

        We will modify the judgment of the district court to
clarify that dismissal of Spence's suit is without prejudice to
Spence bringing another suit under the Rehabilitation Act if and
when he exhausts his Title VII administrative remedies under the
Act.  In all other respects, the district court will be affirmed.
_____