

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-10-2000

# Freed v Consol. Rail Corp.

Precedential or Non-Precedential:

Docket 99-3191

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Freed v Consol. Rail Corp." (2000). *2000 Decisions.* Paper 3.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/3

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 10, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-3191

JANICE FREED,
        Appellant

v.

CONSOLIDATED RAIL CORPORATION

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 98-cv-01670)
District Judge: Hon. Donetta W. Ambrose

Argued October 19, 1999

Before: SLOVITER, MANSMANN, and ROTH,
Circuit Judges,

(Filed January 10, 2000)

        Mark T. Wade
        Peirce, Raimond, Osterhout,
         Wade, Carlson & Coulter
        Pittsburgh, PA 15219

        Joseph M. Sellers (Argued)
        Suzette M. Malveaux
        Cohen, Milstein, Hausfeld & Toll
        Washington, DC 20005

         Attorneys for Appellant

        Thomas H. May (Argued)
        Dickie, McCamey & Chilcote
        Pittsburgh, PA 15222

         Attorney for Appellee

        Corbett Anderson
        McGuiness, Norris & Williams
        Washington, DC 20005

         Attorney for Amicus-Appellee
         Equal Employment Advisory

Council

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Plaintiff Janice Freed appeals from the order dismissing her claim against the Consolidated Rail Corporation ("Conrail") under the Rehabilitation Act for failure to exhaust her administrative remedies. Her appeal requires that we decide whether a plaintiff must exhaust administrative remedies prior to bringing suit under section 504 of the Rehabilitation Act against a private recipient of federal funds.

I.

Freed's complaint sets out the following facts, which in the context of a motion to dismiss we must accept as true, although we have some question about the chronology of events. Freed began working for Conrail in 1978 in a clerical capacity. She suffered from herniated discs, which limited her ability to perform tasks that required bending, lifting, and climbing. She alleges that in April of 1992 she was "bumped" from her position at Conrail.

In late 1992 or early 1993, Freed's condition began to stabilize to the point where she could return to work full time albeit with limitations on standing, bending, and lifting. Conrail recalled her to work in early 1993 but she "was specifically told that if she had any restrictions she

2

would not be permitted to return to work." App. at 8. Apparently because she did have restrictions, Freed has since been carried by Conrail as "disabled – prolonged sickness." App. at 8. According to Freed, she could have performed the job for which she was recalled with only minimal accommodation. Conrail has never performed a functional assessment of Freed's ability to perform her former job or any other job, although she alleges she was eligible for numerous vacant positions.

Before commencing this litigation, Freed was a member of a class action certified in the Western District of Pennsylvania. The class was certified to pursue claims for injunctive relief under the Americans with Disabilities Act, 42 U.S.C. S 12101 et seq. (ADA), and section 504 of the Rehabilitation Act, 29 U.S.C. S 794 (the "Act"), and included current and former Conrail employees and applicants who "ha[d] been denied employment . . . because of their

disabilities." App. at 22. The case was tried before the court which found for Conrail on the merits, a decision affirmed on appeal. See Mandichak v. Consolidated Rail Corp., 178 F.3d 1279 (3d Cir. 1999) (table). The District Court vacated its class certification order and entered judgment for Conrail on August 20, 1998 "without prejudice to the right of any plaintiff, or any other employee, to assert individual claims against Conrail under the ADA [or] the Rehabilitation Act." App. at 45.

Freed then brought this individual suit against Conrail alleging the company had violated Title I of the ADA and section 504 of the Rehabilitation Act. Conrail filed a motion to dismiss asserting that both claims were barred by Freed's failure to exhaust her administrative remedies, as she had not filed an administrative charge with the Equal Employment Opportunity Commission or with the appropriate state agency before, during, or after the maintenance of the class action. The Magistrate Judge issued a report recommending dismissal for failure to exhaust, and the District Court entered an order adopting that report. This appeal followed.

Shortly before the oral argument, Freed filed a motion under Federal Rule of Appellate Procedure 42(b) for

3

voluntary dismissal of her ADA claim on appeal. 1 We advised the parties at oral argument that we would grant that motion, subject to our later decision on costs. We have now entered an order granting the Rule 42(b) motion. It follows that the sole issue remaining for disposition on appeal is whether Freed was required to exhaust administrative remedies prior to bringing suit under section 504 of the Rehabilitation Act.2

We have jurisdiction pursuant to 28 U.S.C. S 1291. Our review of the District Court's order dismissing Freed's claim under Rule 12(b)(6) is plenary. See Moore v. Tartler, 986 F.2d 682, 685 (3d Cir. 1993).

II.

We begin by briefly discussing the pertinent sections of the Rehabilitation Act.

Section 501 of the Act is directed specifically at employment discrimination and requires each federal department, agency, and instrumentality, including the Postal Service ("federal employer"), to adopt an affirmative action program plan for the hiring, placement and

advancement of persons with disabilities. 29 U.S.C.
S 791(b). Originally, Congress provided no private right of
action for persons aggrieved by a violation of section 501,
but in 1978 Congress added such a right. This was effected
by providing in section 505(a)(1) that "[t]he remedies,

_____

1. When it first learned through the reply brief of Freed's suggestion that
she would seek to withdraw her appeal of the judgment on the ADA
claim, Conrail objected. It argued that Freed had not filed a Rule 42(b)
motion, which she later did. It also argued that withdrawal of the ADA
claim should not be permitted because the same issue was pending in
other cases against it. We do not deem that a sufficient ground for
requiring the parties to litigate the issue in this case if plaintiff is
satisfied to proceed only on her claim under section 504 of the
Rehabilitation Act.

2. We wish to comment on the civility shown by counsel for both parties
during the oral argument to the court and to each other. It is, of course,
consistent with the standard of conduct we expect and have often
observed; we make note of it here to encourage all attorneys to do the
same.

4

procedures, and rights . . . [of Title VII] of the Civil Rights
Act of 1964 . . . shall be available, with respect to any
complaint" under section 501. 29 U.S.C. S 794a(a)(1). Title
VII requires plaintiffs to exhaust the administrative process
prior to bringing suit. See Trevino–Barton v. Pittsburgh Nat'l.
Bank, 919 F.2d 874, 878 (3d Cir. 1990). Thus, persons can
sue a federal employer for injunctive relief and/or damages
for violating section 501 but are required to exhaust
administrative remedies.

Section 504 has a broader reach. It bars both federal
agencies and private entities that receive federal funding
from discriminating on the basis of disability and is not
limited to the employment context. It provides:

> No otherwise qualified individual with a disability . . .
> shall, solely by reason of his or her disability, be
> excluded from the participation in, be denied the
> benefits of, or be subjected to discrimination under any
> program or activity receiving Federal financial
> assistance or under any program or activity conducted
> by any Executive agency or by the United States Postal
> Service.

29 U.S.C. S 794(a).

This section originally applied only to programs receiving federal funding, but the 1978 amendments to the Act made section 504 applicable to federal agencies and the Postal Service. However, in contrast to the incorporation of Title VII rights and remedies into section 501, the 1978 amendments provided in section 505(a)(2), 29 U.S.C. S 794a(a)(2), that "the remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964" were applicable to persons aggrieved by a violation of section 504. Title VI includes an administrative procedure that can lead to the withdrawal of federal funding from programs or activities that discriminate on the basis of race, color, or national origin, but it does not require that plaintiffs exhaust the administrative process before bringing suit. See Jeremy H. v. Mount Lebanon School Dist., 95 F.3d 272, 281 (3d Cir. 1996); Chowdhury v. Reading Hosp. & Med. Ctr., 677 F.2d 317, 321–22 (3d Cir. 1982). We have explained that this reflects a recognition that the Title VI

5

administrative process "cannot provide the relief[plaintiffs] seek." Id. at 323 n.16.

In Spence v. Straw, 54 F.3d 196 (3d Cir. 1995), we were faced with a suit under section 504 filed by a federal employee against his federal employer. We noted that if the plaintiff had brought suit under section 501, he would have been required to exhaust his administrative remedies. We shared the concern expressed in McGuinness v. United States Postal Serv., 744 F.2d 1318, 1322 (7th Cir. 1984), that this would permit a federal employee to circumvent the section 501 exhaustion requirement by the simple expedient of suing under section 504. The McGuinness court had believed it improbable that Congress,"having specifically addressed employment of the handicapped by federal agencies . . . in section 501, would have done so again a few sections later in section 504." Id. at 1321. We too believed it was unlikely that Congress wanted to provide "different sets of remedies, having different exhaustion requirements, for the same wrong committed by the same employer." Spence, 54 F.3d at 201 (quoting McGuinness, 744 F.2d at 1321). Therefore, we held, as had the court in McGuinness, that federal employees must exhaust Title VII administrative remedies before filing suit against a federal employer under section 504.

The situation in Spence was far different than that presented here. Conrail is not a federal employer, but rather is the recipient of federal funding, and thus it can be sued for a violation of section 504 but not for a violation of section 501. Therefore, our concerns in Spence are not

implicated here.

Instead, Freed's case more closely resembles that of the plaintiff in Jeremy H., 95 F.3d 272, decided a year after Spence. Jeremy H., a visually handicapped minor, sued his school district, school board, and various individual defendants under a number of statutes, including section 504 of the Rehabilitation Act. The District Court dismissed the complaint for failure to exhaust. In discussing whether Jeremy H. needed to exhaust his administrative remedies to maintain the section 504 claim, we noted that section 504 "is not ordinarily subject to an exhaustion requirement." Id. at 282 n.17. We distinguished Spence as "involving very

6

unusual circumstances" that required us to construe the apparently incongruous enforcement scheme created by sections 501 and 504 as applied to employment discrimination suits against federal agencies. Id. at 281. Because Jeremy H., unlike Spence, was not suing a federal agency for employment discrimination, and his claims did not "have the effect of circumventing some other Congressionally mandated exhaustion requirement," id. at 282, we held that he was not required to exhaust his administrative remedies before suing on his section 504 claims.

Conrail acknowledges that employees of private recipients of federal funding, unlike their counterparts working for a federal employer, are typically not required to exhaust administrative remedies before filing suit under section 504 of the Rehabilitation Act. Nonetheless, Conrail argues that the District Court did not err in dismissing Freed's complaint for failure to exhaust in light of our decisions in Spence and Jeremy H. Those decisions do not counsel dismissal here. Freed, unlike the plaintiffs in Spence and McGuinness, does not have the option of suing under section 501. Because Freed has withdrawn her ADA claim, we are presented with the narrow issue whether a plaintiff suing solely under section 504 must exhaust the Title VI administrative process before bringing suit against a private recipient of federal funds. We know of no precedent, in this court or elsewhere, that imposes such a requirement.

Every court of appeals to have addressed this question has already held that plaintiffs suing private recipients of federal funds under section 504 do not need to exhaust Title VI administrative remedies. See, e.g., Brennan v. King, 139 F.3d 258, 268 n.12 (1st Cir. 1998); Tuck v. HCA Health Serv. of Tennessee, Inc., 7 F.3d 465, 470-71 (6th Cir. 1993); Smith v. Barton, 914 F.2d 1330, 1338 (9th Cir. 1990);

Miener v. State of Missouri, 673 F.2d 969, 978 (8th Cir. 1982); Pushkin v. Regents of the Univ. of Colo., 658 F.2d 1372, 1382 (10th Cir. 1981); Lloyd v. Regional Transp. Auth., 548 F.2d 1277, 1287 (7th Cir. 1977). These holdings reflect the fact that "the applicable remedies[under Title VI] provide no individual relief, including no damage orders against an employer." Tuck, 7 F.3d at 471. The Title VI

7

administrative remedy, which provides for the termination of federal financial assistance to programs that violate Title VI, 42 U.S.C. S 2000d-1, does not "include or encompass equitable relief for the affected individual." Pushkin, 658 F.2d at 1381.

Our earlier holding in NAACP v. Medical Center, Inc., 599 F.2d 1247 (3d Cir. 1979), although arising in a different context, is consistent with this line of cases. In Medical Center, individual and organizational plaintiffs sued the Wilmington Medical Center, a hospital that received substantial federal support, alleging that the hospital had chosen a relocation site in a discriminatory manner. The plaintiffs also sued various participants in the review process established by the Social Security Act to screen capital expenditure programs. We rejected defendants' arguments that Title VI and section 504 of the Rehabilitation Act did not create private rights of action and, in making that determination, we held that"there exists a private cause of action under section 601 of Title VI which may be asserted without preliminary recourse to agency remedial procedures." Id. at 1250 n.10. We based this holding on the fact that "private parties are normally precluded from advancing their [Title VI] rights before the administrative agency." Id. at 1254.

Because "the regulations that enforce section 504[of the Rehabilitation Act] are the same procedures adopted to enforce Title IX," Tuck, 7 F.3d at 471, most of the cases holding that there need be no exhaustion for section 504 claims have relied on the Supreme Court's decision in Cannon v. University of Chicago, 441 U.S. 677 (1979). There, the Court held that Title IX (which is enforced by the same procedures that enforce section 504) created a private right of action that plaintiffs could pursue without exhausting administrative remedies. See id. at 706-08 n.41.

Conrail argues that the Supreme Court's more recent decision in Franklin v. Gwinnett County Public Schools, 503 U.S. 60 (1992), which held that monetary damages were available to plaintiffs in Title IX actions, severely eroded the rationale for the decisions of the courts of appeals that held

that non-federal employees suing under section 504 are not required to exhaust administrative remedies. Conrail views

the earlier cases as dependent on the absence of administrative remedies providing any individual relief, including damages. Conrail interprets Franklin to imply "the existence of both a private right of action and monetary damages for violations of section 504" of the Rehabilitation Act. Appellee's brief at 12. Indeed, we relied on Franklin in our holding that monetary damages are available in section 504 actions. See W.B. v. Matula, 67 F.3d 484, 494 (3d Cir. 1995). But we do not agree that this calls into question the validity of the earlier holdings that exhaustion was not required by section 504 plaintiffs.

In the first place, we have explained that section 504 (and Title VI) plaintiffs need not undertake administrative exhaustion because that process fails to provide them with meaningful relief. See Chowdhury, 677 F.2d at 322; see also Jeremy H., 95 F.3d at 282 n.17 (decided after Matula and reiterating that section 504 "is not ordinarily subject to an exhaustion requirement"). For example, although the Department of Transportation regulations that implement section 504 of the Rehabilitation Act, see 49 C.F.R. pt. 27, permit an aggrieved person to file a "written complaint with the responsible Departmental official," 49 C.F.R. S 27.123(b), they do not provide for individual relief. The Department may attempt informal dispute resolution with the recipient of federal funds, see 49 C.F.R. S 27.123(d), and, if these efforts are unsuccessful, may determine, after a hearing, whether to suspend or terminate funding, see 49 C.F.R. S 27.125. Although the complainant is notified of the time and place of the hearing, see 49 C.F.R. S 27.127(a)(2), the regulations make no provision for the complainant to participate in the hearing or to recover damages, see 49 C.F.R. S 27.127; see also Miener, 673 F.2d at 978 (finding Department of Health and Human Services administrative process inadequate because section 504 plaintiff may not furnish evidence or participate in investigation, appeal an adverse decision, or recover damages). Even though plaintiffs may recover damages in a court proceeding, the applicable administrative process under Title VI does not provide them with meaningful relief.

In the second place, nothing in the language of section 504 or Title VI requires administrative exhaustion. Conrail

argues that even where a private plaintiff has not included a claim under Title I of the ADA (which requires exhaustion of Title VII rather than Title VI remedies), 42 U.S.C. S 12117(a), with his or her claim under section 504 of the Rehabilitation Act, the fact that a plaintiff has the option of doing so gives plaintiffs the ability to circumvent the ADA exhaustion process by limiting their claim to one under section 504. However, we are dealing with an issue of Congress's intent. In Spence, we were construing two potentially conflicting sections of the Rehabilitation Act and held Congress intended to require exhaustion. We have no basis to assume that Congress had a similar intent with respect to two independent statutes.

Conrail argues that Congress has already expressed a desire to coordinate the ADA with the Rehabilitation Act and it points to various provisions of these two statutes. The aim of these provisions is to achieve substantive conformity and to avoid duplication of effort. See 42 U.S.C. S 12117(b); see also 29 U.S.C. S 791(g) (standards to determine whether S 501 of the Rehabilitation Act has been violated are the same as those applied under ADA sections); 29 U.S.C. S 794(d) (same). Nothing in these provisions addresses an exhaustion requirement. Where Congress has wanted to coordinate statutes in that way it has done so expressly. See, e.g., 20 U.S.C.S 1415(f) (requiring plaintiffs suing under other federal statutes, including the Rehabilitation Act, to exhaust administrative remedies under the Individuals with Disabilities Education Act "to the same extent as would be required had the action been brought under this subchapter").

Accordingly, we reaffirm our long-standing position that section 504 plaintiffs may proceed directly to court without pursuing administrative remedies.

III.

For the reasons set forth, we will reverse the decision of the District Court dismissing Freed's claim under section 504 of the Rehabilitation Act and remand to that court for further proceedings. Because Freed's failure to dismiss her appeal of the dismissal of the ADA claim earlier put Conrail

10

to the effort and expense of briefing that issue, we will require that each party bear its own costs.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

11