**AMERICAN COUNCIL OF THE BLIND, et al., Plaintiffs,**

v.

**John W. SNOW, Secretary of the Treasury, et al., Defendants.**

**No. CIV.A. 02–0864(JR).**

United States District Court, District of Columbia.

March 31, 2004.

Jeffrey A. Lovitky, Jeffrey A. Lovitky, Attorney at Law, Washington, DC, for Plaintiffs.

W. Scott Simpson, U.S. Department of Justice, Washington, DC, for Defendants.

### *MEMORANDUM*

ROBERTSON, District Judge.

Plaintiffs, blind and visually impaired individuals and the American Council for the Blind, an organization that advocates for the blind and visually impaired, allege in this suit that the Department of Treasury's failure to design and issue paper currency that is readily distinguishable to blind and visually impaired individuals vio-

lates section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Plaintiffs seek a declaratory judgment and an order requiring the defendants to implement specific design changes to the currency. I denied an early defense motion for summary judgment because the record lacked factual development. Defendants now move to dismiss, on the grounds: (1) that the design of U.S. currency is entrusted by statute to the discretion of the Department of the Treasury and not subject to the Rehabilitation Act; (2) that existing currency does not discriminate against the visually impaired; and (3) that plaintiffs' have not exhausted their administrative remedies. In the alternative, defendants argue (a) that the agency should retain discretion over any redesign of the currency; (b) that redesign of the one-dollar bill is expressly prohibited by Congress; and (c) that the Treasurer of the United States should be dismissed as a defendant.

### Analysis

1. *The Secretary's discretion does not preclude application of the Rehabilitation Act.*

■ Defendants assert that the Rehabilitation Act cannot be applied to the design of U.S. currency because the form of the currency is committed to the sole discretion of the Secretary of the Treasury (the Secretary). The Federal Reserve Act provides:

In order to furnish suitable notes for circulation as Federal reserve notes, the Secretary of the Treasury shall cause plates and dies to be engraved *in the best manner to guard against counterfeits and fraudulent alterations,* and shall have printed therefrom and numbered such quantities of such notes of the denominations of $1, $2, $5, $10, $20, $50, $100, $500, $1,000, $5,000, $10,000 as may be required to supply the Federal Reserve banks. *Such notes shall be in form and tenor as directed by the*

*Secretary of the Treasury under the provisions of this chapter* and shall bear the distinctive numbers of the several Federal reserve banks through which they are issued.

12 U.S.C. § 418 (emphasis added). Defendants argue, essentially, that this specific provision trumps the more general language of Section 504 of the Rehabilitation Act, which provides that:

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794.

To determine whether the specific provisions of the Federal Reserve Act preclude application of section 504, I must first determine whether the statutes are in conflict with one another. *Edmond v. United States,* 520 U.S. 651, 659, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997) ("Ordinarily, where a specific provision conflicts with a general one, the specific governs."). The cases defendants offer to support their argument all involve specific provisions that actually conflict with more general statutes. *See, e.g., Stewart v. Smith,* 673 F.2d 485, 492 (D.C.Cir.1982); *Farmer v. Employment Sec. Comm'n of N.C.,* 4 F.3d 1274, 1284 (4th Cir.1993); *Knutzen v. Eben Ezer Lutheran Hous. Ctr.,* 815 F.2d 1343 (10th Cir.1987). But, of course, there is no obvious conflict between the Secretary's duty to design the currency "in the best manner to guard against counterfeits and fraudulent alterations" and his obligations under the Rehabilitation Act. In fact, plaintiffs advance a persuasive argument to the con-

trary. They suggest that creating bills in varying sizes would eliminate the counterfeiting practice of bleaching the ink off smaller denomination bills and printing higher denomination markings onto the currency paper. This, however, is a matter to be heard and decided on the merits.

2. *Plaintiffs have stated a claim under the Rehabilitation Act.*

██ To state a claim under section 504, a plaintiff must (1) be an individual with a disability (2) who is "otherwise qualified" for participation in a program or activity (3) of an Executive agency, and who is (4) "denied the benefits of" or "subjected to discrimination under" that program or activity. 29 U.S.C. § 794. The Secretary's motion, addressing only the fourth element, asserts that the form of the existing currency neither denies plaintiffs the benefit of currency-based transactions nor subjects them to discrimination.

Whether the form of U.S. currency denies plaintiffs the benefits of currency-based transactions or subjects them to discrimination within the meaning of section 504 turns on whether plaintiffs have been afforded "meaningful access" to currency-based transactions.[1] *Alexander v. Choate*, 469 U.S. 287, 301, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). When applying this standard, I must balance "the need to give effect to the statutory objectives and the desire to keep [section] 504 within manageable bounds." *Id.* at 299, 105 S.Ct. 712. Although an agency must provide meaningful access to its programs, *id.* at 301, 105 S.Ct. 712, it is not required to fundamentally alter the nature of the programs in order to do so, *Southeastern Community College v. Davis*, 442 U.S. 397, 410, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979)(section 504 did not require nursing school to make major adjustments to program to accom-

modate prospective student with severe hearing impairment).

Defendants assert that the plaintiffs already benefit from "meaningful access" to currency-based transactions and that the "optimal access" or "specially-designed access" sought by plaintiffs is not mandated by the Rehabilitation Act. It is true that section 504 does not guarantee equal access:

> Section 504 seeks to assure evenhanded treatment and the opportunity for handicapped individuals to participate in and benefit from programs receiving federal assistance. The Act does not, however, guarantee the handicapped equal results from the provision of state Medicaid, even assuming some measure of equality of health could be constructed.

*Choate*, 469 U.S. at 304, 105 S.Ct. 712. It is equally clear that the Rehabilitation Act was not meant to address certain types of claims. For example, section 504 is not a mandate that benefits be allocated equally among different groups of handicapped individuals. *See Traynor v. Turnage*, 485 U.S. 535, 549, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988)("There is nothing in the Rehabilitation Act that requires that any benefit extended to one category of handicapped persons must be extended to all other categories of handicapped persons."); *Modderno v. King*, 82 F.3d 1059, 1060–61 (D.C.Cir.1996) (federal agency did not violate section 504 when it provided employees with health insurance that afforded greater benefits to those with physical illnesses than those with mental illnesses). Similarly, plaintiffs may not demand modifications that would plainly be at odds with the purpose of a program. *See, e.g., Baker v. Dep't of Env'tl Conservation*, 634 F.Supp. 1460 (N.D.N.Y.1986) (plaintiffs's request for special permission to use mo-

---

1. It is assumed for purposes of this motion that the "program or activity" involved is indeed "currency-based transactions," as the Secretary has suggested.

torized vehicles to access wilderness areas of park would be "inimical to the nature of these areas" and would "destroy the very benefit sought by the plaintiffs."). But, apart from these extremes, the "meaningful access" standard does not have precise boundaries, as the Supreme Court has acknowledged:

> We do not suggest that the line between a lawful refusal to extend affirmative action and illegal discrimination against handicapped persons always will be clear.

*Davis*, 442 U.S. at 412, 99 S.Ct. 2361.

The complaint alleges that there are approximately 200,000 individuals in the United States who are blind and several million more who are visually impaired; that people who are blind are unable without assistance to identify banknote denominations; that people with low vision have difficulty with U.S. currency, especially under certain lighting conditions (*e.g.*, in a taxi at night). Compl., at ¶¶ 23–32. Plaintiffs acknowledge that portable electronic devices do exist to assist with banknote differentiation but maintains that they are expensive, relatively slow, and not always reliable. Compl., at ¶ 33. Here, assuming as I must the truth of plaintiff's allegations and construing them in favor of the plaintiffs, I cannot conclude that "it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of his claim which would entitle [them] to relief." *Em-*

*pagran S.A. v. F. Hoffman–LaRoche, Ltd.*, 315 F.3d 338, 343 (D.C.Cir.2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). I am satisfied that plaintiffs have properly alleged that they are disproportionately burdened by the current form of the currency and that this burden may constitute denial of meaningful access. The inquiry beyond this point is necessarily fact-specific and demands an examination of the relative burdens of the handicapped and the entity administering the program. *See, e.g., Crowder v. Kitagawa*, 81 F.3d 1480, 1485–86 (9th Cir.1996) (under Rehabilitation Act precedent "the determination of what constitutes reasonable modification is highly fact-specific, requiring case-by-case inquiry"). Defendants do not assert, nor could they appropriately assert on a motion to dismiss, that redesign of the currency would impose undue financial or administrative burdens. The place for that argument would be a motion for summary judgment.

### 3. *Exhaustion of administrative remedies would be futile.*

█ The question of whether exhaustion is required for a claim brought under section 504 is a somewhat vexing one. Plaintiff notes, correctly, that the plain language of the statute does not require exhaustion,[2] but defendants insist that exhaustion should be required. There is

---

2. The procedures applicable to claims brought under section 504 are set forth in 29 U.S.C. § 794a(2), which provides:

> The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.] shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

Title VI, by its own terms, "includes an administrative procedure that can lead to the withdrawal of federal funding from programs or activities that discriminate on the basis of race, color, or national origin, but it does not require that plaintiffs exhaust the administrative process before bringing suit." *Freed*, 201 F.3d at 191. (Notably, neither § 794a nor the remedial provisions of Title VI make any reference to the recent amendment to section 504 that extends the prohibition against discrimination to "any program or activity conducted by any Executive agency or by the United States Postal Service," § 794.)

some support for both positions. The Third Circuit has recently found that "every court of appeals to have addressed this question" has held that plaintiffs suing private recipients of federal funds under section 504 need not exhaust Title VI administrative remedies, *see Freed v. Consolidated Rail Corp.,* 201 F.3d 188, 192 (2000), but that is because the only administrative remedy Title VI offers is termination of federal funding to programs that violate Title VI, with neither injunctive relief nor damages to aggrieved individuals. *Id.* Defendants insist that exhaustion should nevertheless be required in a suit like this one. The Fifth Circuit has indeed read an exhaustion requirement into section 504 in a case brought against the U.S. Postal Services. *Prewitt v. United States,* 662 F.2d 292, 304 (1981).

I need not decide whether exhaustion is required, however, because, even if it were, exhaustion by these plaintiffs would be futile. *See Randolph–Sheppard Vendors of Am. v. Weinberger,* 795 F.2d 90, 105–106 (D.C.Cir.1986).

> The doctrine of exhaustion is intended, in part, to afford the administrative agency the first opportunity to correct any error. When the agency has already made it abundantly obvious that it would not correct the error and would not conform its actions with the strictures of [a statute], it would be meaningless to compel the hapless plaintiff to pursue further administrative remedies simply for form's sake.

*Daedalus Enterprises, Inc. v. Baldrige,* 563 F.Supp. 1345, 1350 (D.D.C.1983). Defendants' submission that the Rehabilitation Act does not even apply to the printing of currency is tantamount to an admission that "there is no administrative remedy to pursue." Rep., at 8. Moreover, the agency made its position on the merits abundantly clear in its early motion for summary judgment: that rede-

signing the currency to make it more accessible to the visually impaired would cost hundreds of millions of dollars a year. *See generally* Ferguson Decl. (Def.Mot.Sum. J., Ex. A). Further exhaustion by plaintiffs will not be required in this case.

4. *Specific prayers for relief will not be dismissed or stricken at this time.*

Defendants ask that I dismiss, or strike, two of plaintiffs' specific prayers for relief: the inclusion of certain specific features in a redesigned currency, and "a permanent injunction mandating that the $1 banknote be redesigned to incorporate new low vision features as mandated by Congress." Compl., at 17. I decline to do so, even though it does appear unlikely that a specific injunction of any kind would be appropriate given the extent of the Secretary's discretion over the design of the currency. It is true that redesign of the one-dollar bill is precluded by the current-year appropriations act for the Department of the Treasury, 117 Stat. 11, 439 (2003) ("None of the funds appropriated... or otherwise available to the Department of the Treasury or the Bureau of Engraving and Printing may be used to redesign the $1 Federal Reserve note."), but there is no guarantee that a similar prohibition will be in effect when a final ruling is issued in this case.

5. *The Treasurer of the United States will be dismissed as a defendant.*

Finally, defendants submit that the Treasurer of the United States has no hand in the design or production of the currency and therefore should be dismissed as a defendant from this suit. Plaintiffs do not dispute the point. Under Local Rule 7.1(b), the motion will be treated as conceded, and the Treasurer will be dismissed as a defendant.

### ORDER

For the reasons stated in the accompanying memorandum, defendants' motion to dismiss [15] is **DENIED**, except that the Treasurer of the United States is **DISMISSED AS A DEFENDANT.**

**SO ORDERED.**