**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3743
_____

BRIDGETT CROSS,
                                        Appellant

v.

POSTMASTER GENERAL OF THE UNITED STATES
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 2-12-cv-02670)
District Judge: Honorable Madeline C. Arleo

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 3, 2017

Before:  RESTREPO, SCIRICA and FISHER, Circuit Judges

(Opinion filed: July 6, 2017)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Bridgett Cross appeals pro se from the District Court's entry of summary judgment on her claims filed under the Rehabilitation Act. We will affirm.

I.

Cross started working for the United States Postal Service (USPS) in 1987. In April 2008, while working as a Health and Resource Management (HRM) Specialist[1] at the Broad Street facility in Newark, New Jersey, Cross developed a severe foot infection[2] that resulted in her hospitalization and kept her out of work until May 2009. When she returned to work, she claimed to have difficulty walking, though she continued working until early October 2009, when she had hammertoe surgery. She returned to work later that month in a walking boot.

Around that time, she asked her manager, Sharon Mortola, about a transfer to the Kilmer facility in Edison, New Jersey.[3] According to Mortola, Cross did not make a formal transfer request until early June 2010, when Mortola relayed it to Frank Carney, the Manager of Human Resources, who advised Mortola that there was no available

---

[1] HRM specialists process the claims forms necessary for injured USPS workers to file for injury compensation benefits. Cross conceded at her deposition that this was a "sit-down job," though she stated that she often had to walk from her desk to the printer, fax, or copy machine, a distance of approximately 22 feet.

[2] The infection apparently caused her to develop hammertoe, a deformity of a toe joint (or joints) that is often painful.

[3] According to Cross' deposition testimony, she requested the transfer because Broad Street had limited handicapped parking spaces, and the bathroom doors there—which she apparently opened with her foot—were heavy. Cross requested the Kilmer facility because the doors there opened automatically; she also told Mortola that working from Kilmer would reduce her commute by 30 minutes.

office space in Kilmer at that time, largely because Kilmer's administrative offices were being refurbished.[4]  Cross' request was ultimately denied in June 2010.

Around that time, Cross also claimed that Mortola denied her requests to cross-train in other departments, at least in part, because of her disability.[5]  But Cross could not identify any discrete request or denial—she conceded at her deposition that she never requested any "specific training," but that she "put [the requests] out there as a general statement, [] and wasn't asking for anything in particular."  Cross also conceded that her failure to receive cross-training did not deprive her of any discrete advancement opportunities, such as higher pay or a better position.

In October 2010, Cross had a second hammertoe surgery, and did not return to work until the summer of 2011, when, following a reduction-in-force of HRM specialists, she started a position as a human resources specialist in the Labor Relations division.  In May 2012, the Broad Street employees—including Cross, who was then working as a Labor Relations specialist—transferred to the Kilmer facility.  As of the month of her deposition, October 2015, Cross was working in Kilmer as a retail specialist in the HRM

---

[4] Beyond the lack of available space, according to Mortola, "[a]llowing [] Cross to work from Kilmer at this time would have greatly hindered the HRM Department's ability to process injury compensation claims . . . . [because] HRM specialists worked with paper files . . . . [i]f [] Cross was the only HRM specialist working out of Kilmer, there would be no way—other than driving from Newark to Edison—for another specialist to access those files when [] Cross was out of the office."

[5] Cross stated at her deposition that the "general vibe" in the building was that "[n]obody likes a person that complains about their disabilities."

Department. All of these positions were the same pay grade as the HRM specialist position in which she worked at the time of her injury.

Meanwhile, in August 2010, Cross filed a race- and disability-based complaint with the Postal Service's National EEO Investigative Services Office (NEEOISO), citing, among other things, Mortola's denial of her transfer request and request for cross-training.[6] NEEOISO accepted the transfer and cross-training claims for investigation, but rejected her other claims.[7] These accepted claims continued before the Equal Employment Opportunity Commission, and were ultimately dismissed in March 2012 because Cross chose to proceed with her case in the District Court.

In her original complaint, filed in the District Court in May 2012, Cross alleged (1) racial discrimination and retaliation under Title VII of the Civil Rights Act; and (2) violation of the Americans with Disabilities Act (ADA). About a year later, the District Court granted the Postmaster's motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6), concluding that Cross had not properly exhausted—nor sufficiently pleaded—her Title VII claims, and that her exclusive remedy for her disability-related

---

[6] Cross also claimed discrimination based on Mortola's opposition to a workers' compensation claim she had filed, and Mortola's denial of her requests (1) to be a part of the NRP team, a sub-group within the HRM department; and (2) for FMLA training. None of these alleged discriminatory acts is at issue in this appeal.

[7] The NEEOISO concluded that "[t]he proper forum for [Cross] to have raised dissatisfaction with the processing of her [workers' compensation] claim is through the Office of Workers' Compensation Program," and that her NRP and FMLA claims were untimely.

claims was the Rehabilitation Act.[8]  Cross then filed an amended complaint alleging four

causes of action under the Rehabilitation Act: (1) disparate treatment; (2) failure to

accommodate; (3) retaliation; and (4) hostile work environment.

The District Court, again acting pursuant to Rule 12(b)(6), dismissed the

retaliation and hostile-work-environment claims, concluding that Cross had neither

properly exhausted nor sufficiently pleaded them.  Ultimately, the District Court granted

summary judgment on her remaining disparate-treatment and failure-to-accommodate

claims, concluding that she failed to show an adverse action with respect to her disparate

treatment claim, and that her requested accommodation—a transfer to the Kilmer

facility—was not reasonable.  This timely appeal ensued.

## II.

We have jurisdiction under 28 U.S.C. § 1291.  On appeal, Cross challenges only

the District Court's award of summary judgment on her disparate-treatment[9] and failure-

to-accommodate claims.  We exercise plenary review over this judgment and apply the

same test the District Court utilized—whether the record "shows that there is no genuine

---

[8] See Spence v. Straw, 54 F.3d 196, 202 (3d Cir. 1995) ("Rehabilitation Act provides the exclusive means by which a litigant may raise claims of discrimination on the basis of handicap by federal agencies.").

[9] Cross predicated her disparate-treatment claim on Mortola's denial of her requests (1) to be a part of the NRP team; (2) for FMLA training; and (3) for cross-training.  Both the NEEOISO and the District Court found that the NRP and FMLA claims were untimely, and the District Court dismissed them as procedurally barred for that reason.  Because Cross has not challenged this dismissal on appeal, we will address only the cross-training claim.  See Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief[.]").

5

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009).

With respect to Cross' disparate-treatment claim, the District Court concluded that she had not shown an adverse employment action because "she acknowledge[d] that she did not lose any pay as a result of the lack of cross-training" and did not "set forth any evidence that she would have received [better-paying] opportunities with cross-training." We agree. A disparate-treatment claim under the Rehabilitation Act requires a plaintiff to show, among other things, an adverse employment action—that is, one "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004) (internal quotation marks and citation omitted).[10] And "[a]n employer's denial of a training request, without something more, is not itself an adverse employment action." Clegg v. Ark. Dep't of Corr., 496 F.3d 922, 928 (8th Cir. 2007). Because Cross relied on nothing more than Mortola's denial of her vague training requests—she did not identify any accompanying change in "compensation, terms, conditions, or privileges of employment"—the District Court properly awarded summary judgment on this claim.

Cross contends on appeal that she "suffered an adverse action because [she] was ousted out of [her] job and placed in a position with diminished responsibilities where [she] continued to be victimized by supervisors." While this would likely qualify as an

---

[10] While Storey addressed an adverse action in the Title VII context, "the methods and manner of proof . . . for Title VII cases [are] equally applicable to discrimination claims under the Rehabilitation Act." Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007).

adverse action, Cross did not advance such a claim below, and, more importantly, has not provided sufficient—or any—evidence of it to survive the Postmaster's motion. See Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) ("To survive summary judgment, a party must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.") (internal quotation marks and citation omitted). Indeed, Cross conceded that, after she left her HRM specialist position following a reduction-in-force, she held a number of positions at the same pay grade.

As to Cross' failure-to-transfer claim, she argues on appeal that "employers have a duty to engage in the interactive process once an accommodation has been requested," and that the USPS failed to do so in her case. While employers generally do owe such a duty, a plaintiff claiming a failure to transfer under the Rehabilitation Act—as Cross does here—has the initial burden of "demonstrating [] that there was a vacant, funded position." Donahue v. Consol. Rail Corp., 224 F.3d 226, 230 (3d Cir. 2000). And "if, after a full opportunity for discovery, the summary judgment record is insufficient to establish the existence of an appropriate position into which the plaintiff could have been transferred, summary judgment must be granted in favor of the defendant—even if it also appears that the defendant failed to engage in good faith in the interactive process." Id. at 234.

Cross does not dispute that there were no "vacant" HRM specialist positions at Kilmer; rather she argues that the USPS should have created one for her. The Rehabilitation Act imposes no such obligation. See Still v. Freeport-McMoran, Inc., 120

F.3d 50, 53 (5th Cir. 1997) (ADA imposes no "obligation to create a new job for [an employee] at another location").[11] Nor has she identified any other vacant position at Kilmer for which she might have been qualified. Under these circumstances, the District Court properly awarded summary judgment on her failure-to-transfer claim, even if the USPS had failed to engage in the interactive process. Donahue, 224 F.3d at 234. Accordingly, we will affirm the judgment of the District Court.

---

[11] We interpret the ADA and the Rehabilitation Act similarly. Yeskey v. Pa. Dep't of Corr., 118 F.3d 168, 170 (3d Cir. 1997).