USCA1 Opinion

 

 July 17, 1995 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________ No. 95-1027 ARTHUR J. LEARY, Plaintiff, Appellant, v. JOHN H. DALTON, SECRETARY OF THE NAVY, Defendant, Appellee. ____________ ERRATA SHEET The opinion of this court issued on June 14, 1995, is amended as follows: On page 9 of the opinion delete the last six lines of the carryover paragraph starting with "See also Lussier v. ___ ____ _______ Runyon,." ______ UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 95-1027 ARTHUR J. LEARY, Plaintiff, Appellant, v. JOHN H. DALTON, SECRETARY OF THE NAVY Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ J. Joseph McKittrick, with whom McKittrick Law Offices and Karen ____________________ ______________________ _____ B. Hoffman were on brief for appellant. __________ Michael M. DuBose, Assistant United States Attorney, with whom __________________ Jay P. McCloskey, United States Attorney, and David R. Collins, _________________ __________________ Assistant United States Attorney, were on brief for appellee.  ____________________ June 14, 1995 ____________________ BOWNES, Senior Circuit Judge. Plaintiff-appellant BOWNES, Senior Circuit Judge. ____________________ Arthur J. Leary, a civilian employee of the Portsmouth Naval Shipyard ("Shipyard") and the United States Navy, was removed from government service for "excessive unauthorized absence" after he was denied requested leave for the time that he spent in jail following his arrest for driving while intoxicated. After exhausting administrative remedies, Leary filed suit in the United States District Court for the District of Maine against defendant-appellee John H. Dalton, Secretary of the Navy. Leary's complaint alleged that he is an alcoholic and, therefore, an "individual with a handicap"1 within the meaning of the Rehabilitation Act of 1973, 29 U.S.C. 701-797b ("Act"), and that the Navy discriminated against him in violation of the Act by terminating his employment on the basis of his disability. Leary appeals the district court's order granting summary judgment in favor of the Navy. After carefully reviewing the record and considering Leary's arguments, we affirm.  I. Background I. Background __________ Beginning October 1, 1984, Leary was employed by the Navy as a WG-10 electrician in Shop 97 at the Shipyard. Between 1985 and 1989, Leary received numerous incentive  ____________________ 1. In 1992, the Rehabilitation Act was amended to substitute the term "disability" for "handicap." The regulations promulgated under the Act, however, continue to employ the term "handicap." -2- 2 awards and was "Suggestor of the Month" in March, 1989. Leary became a Union Shop Steward in March, 1988 and rose to the rank of Chief Steward for his shop area in January, 1989. On his last performance appraisal, covering the period June 1, 1988 through May 31, 1989, he received a rating of "highly satisfactory."  On August 26, 1989, while off duty, Leary was arrested by state police in Concord, New Hampshire, for a second offense of driving while intoxicated, driving after license revocation, possessing marijuana, possessing cocaine, transporting a controlled drug, resisting arrest, and assaulting a police officer. Leary was incarcerated in New Hampshire at the Merrimack County Jail, subject to a $10,000 cash bail. Unable to make bail, Leary remained incarcerated until September 13, 1989. When he failed to report to work on August 28, 1989, without having either requested leave in advance or notified his supervisor of his absence, Leary was placed on unauthorized leave status ("Z leave"). As of the date of his arrest, Leary had accumulated 129.5 hours of earned annual leave. On August 29, 1989, Leary's sister called Richard Lavoie, Temporary Service Shop General Foreman, to request on Leary's behalf that he be granted earned annual leave to cover the period of his absence. On August 30, 1989, Leary himself called Lavoie to request emergency annual leave during his incarceration. Leary's -3- 3 request was denied and he was informed that he would be carried on Z leave status until he returned to duty. Leary returned to the Shipyard after twelve consecutive work days of unauthorized absence. Upon his return, he appealed the denial of his request for emergency annual leave through the union grievance process, but after a hearing and due consideration by Shipyard management, the grievance was denied.  By letter dated October 3, 1989, Leary received notice of the Navy's proposed action to remove him from government service for the following reasons: (i) his arrest on August 26, 1989 on the charges set forth supra; (ii) his _____ failure to report to work on August 28, 1989, and his failure to request leave in advance or to notify his supervisor or shop officials as to the reason for his absence; and (iii) his unauthorized absence during the period August 28 through September 13, 1989. On October 19, 1989, Leary and his representatives met with Gary Alamed, Administrative Officer, to make an oral reply to the proposed action. At this meeting, and apparently for the first time, Leary made it known that he had problems with alcohol and drugs and that he considered himself to be protected by the Act. He also stated that he was seeking help for these problems from the Shipyard's Employee Assistance Program. By letter dated December 4, 1989, Leary received notice of the Shipyard's -4- 4 decision to remove him from government service, effective December 11, 1989, for excessive unauthorized absence during the period August 28, 1989, through September 13, 1989. On December 21, 1989, Leary filed an appeal of the Navy's decision with the Merit Systems Protection Board ("MSPB"), in which he alleged discrimination on the basis of a disability and reprisal for his union activity. He also claimed disparate treatment, alleging that other, non- disabled employees had been granted leave for incarceration. On April 9, 1990, after an evidentiary hearing, the Administrative Law Judge ("ALJ") sustained the Navy's action. With respect to Leary's claim of discrimination on the basis of a disability, the ALJ found that, although Leary established that he was disabled due to alcohol and drug dependency, the unauthorized absence for which he was removed was neither caused by, nor entirely a manifestation of, his disability. Accordingly, the ALJ concluded that Leary failed to establish a prima facie case of disability discrimination under the Act. The ALJ also concluded that there was no support for Leary's claim of disparate treatment, finding, inter alia, that the employees alleged to have been granted _____ ____ leave for incarceration were not similarly situated because they were assigned to different shops and supervisors, or because they were absent for fewer than five consecutive days and therefore did not run afoul of Navy leave policy, or -5- 5 because the supervisor granting leave was not aware that leave was requested to cover jail time. By final order dated January 10, 1992, the MSPB denied Leary's petition for review before the full Board. Leary thereafter sought review of the final MSPB decision with the Equal Employment Opportunity Commission ("EEOC"). On August 19, 1993, the EEOC affirmed, finding, inter alia, _____ ____ that, although his problems with alcohol and drug abuse constituted a disability covered by the Act, Leary had failed to establish a sufficient causal nexus between his disability and his termination to make out a claim of discrimination based on disability.  On September 24, 1993, Leary filed a complaint in the district court alleging discrimination under the Act and disparate treatment. On April 28, 1994, the Navy moved for summary judgment. The motion was referred to a magistrate judge, who, on September 19, 1994, recommended that the motion be granted on the ground that Leary failed to establish a prima facie case of discrimination under the Act. On October 3, 1994, Leary filed his objection to the magistrate judge's Recommended Decision. On October 26, 1994, the district court, having made a de novo determination __ ____ of all matters adjudicated by the magistrate judge, affirmed the Recommended Decision and granted summary judgment for the Navy. -6- 6 II. Standard of Review II. Standard of Review __________________ We review a grant of summary judgment de novo, __ ____ evaluating the facts and inferences that may reasonably be drawn therefrom in the light most favorable to the nonmoving party. Morrissey v. Boston Five Cents Sav. Bank, F.S.B., No. _________ ___________________________________ 94-2220, slip op. at 7 (1st Cir. May 15, 1995). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one "'that might affect the outcome of the suit under the governing law.'" Morrissey, _________ No. 94-2220, slip op. at 8 (quoting Anderson v. Liberty ________ _______ Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material ___________ fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. ___ The nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Coll v. PB Diagnostic ____ ______________ Systems, Inc., 50 F.3d 1115, 1121 (1st Cir. 1995).  _____________ III. Discussion III. Discussion __________ Leary makes two arguments on appeal. First, he contends that the district court overlooked two genuine -7- 7 issues of material fact: whether his disability -- alcoholism -- "manifested itself as, or resulted in, the actions which led to his consequent incarceration and absence from work," and therefore constituted the reason for his termination; and whether, with regard to his allegation of disparate treatment, other non-disabled Navy employees were granted leave for their periods of incarceration, or were merely reprimanded (rather than terminated) for their conduct. Leary argues in the alternative that the district court should have applied a "but for" test to determine whether he was terminated because of his alcoholism. We begin by ironing out a procedural wrinkle. Although the district court decided this case under 504 of the Rehabilitation Act, 29 U.S.C. 794 (prohibiting disability discrimination by non-federal recipients of federal funds), Leary actually invoked 501 of the Act, 29 U.S.C. 791, in his complaint. Section 501(b) imposes an affirmative duty on every "department, agency, and instrumentality . . . in the executive branch" of the federal government to provide adequate hiring, placement, and advancement opportunities for individuals with disabilities. Some circuits view 501, accordingly, as the exclusive right of action for federal employees who suffer disability discrimination in the course of their direct employment. See ___ Johnston v. Horne, 875 F.2d 1415 (9th Cir. 1989); Johnson v. ________ _____ _______ -8- 8 United States Postal Serv., 861 F.2d 1475, 1478 (10th Cir. ___________________________ 1988), cert. denied, 493 U.S. 811 (1989); McGuinness v. _____ ______ __________ United States Postal Serv., 744 F.2d 1318, 1321 (7th Cir. ___________________________ 1984). Other circuits, ours included, have permitted such claims to be brought under both 501 and 504. See, e.g., ___ ____ Taub v. Frank, 957 F.2d 8, 10 (1st Cir. 1992) (deciding a  ____ _____ 504 suit by a federal postal employee and setting forth the elements of a prima facie case under that section); Little v. ______ FBI, 1 F.3d 255 (4th Cir. 1993) (noting that federal employee ___ sued employing agency under both 501 and 504); Smith v. _____ United States Postal Serv., 742 F.2d 257, 260 (6th Cir. ____________________________ 1984); Prewitt v. United States Postal Serv., 662 F.2d 292, _______ __________________________ 304 (5th Cir. 1981). The differences between the two sections may be significant in some cases (though not this one, as we shall explain). Not only is it unclear whether the right of action under 504 overlaps with that in 501, it is also unclear, in light of recent amendments to the Rehabilitation Act, whether the two sections require the same showing of causation. As amended in 1992, both sections now incorporate the liability standards of Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. 12111-12117. See 29 U.S.C. 791(g), 794(d). Section 504 alone, however, ___ continues to require a showing that the plaintiff's disability was the sole reason for the defendant's adverse ____ -9- 9 action. See 29 U.S.C. 794(a) ("No otherwise qualified ___ individual with a disability . . . shall, solely by reason of ___________________ her or his disability, be excluded from the participation in, _____________________ be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.") (emphasis added). The precise relationship between the ADA's liability standards and the sole causation test is not well settled. And, to compound these difficulties, it is not obvious whether the 1992 amendments apply to Leary's suit, which accrued and was administratively pending before the amendments took effect. We therefore regard the applicability of 504 and its sole causation test in this federal employment suit as an open question; but one that we need not reach here. Leary agrees on appeal that his claim arises under 504, and that he bears the burden of demonstrating that he was terminated "solely by reason of" his disability. More importantly, we think that the judgment for the Navy should be affirmed, even assuming in Leary's favor that disability discrimination need only be a reason, as opposed to the sole reason, for his termination. In any claim under the Rehabilitation Act, the plaintiff must first establish that s/he has a disability -10- 10 covered by the Act. The governing regulations define an "individual with a [disability]" as one who "(i) Has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) Has a record of such an impairment; or (iii) Is regarded as having such an impairment." 29 C.F.R. 1614.203. It is well settled that alcoholism is a disability within the meaning of the Act.2 See, e.g., Cook v. Department of Mental Health, ___ ____ ____ _____________________________ Retardation & Hosps., 10 F.3d 17, 24 (1st Cir. 1993); Little, ____________________ ______ 1 F.3d at 257; Fuller v. Frank, 916 F.2d 558, 561 (9th Cir. ______ _____ 1990). For the purposes of this appeal, the Navy concedes that Leary is an alcoholic and is therefore an individual with a disability. Leary must also show that with respect to his employment, he is a "qualified individual with a [disability] who, with or without reasonable accommodation, can perform the essential functions of the position in question . . . ." 29 C.F.R. 1614.203(a)(6) (implementing 29 U.S.C. 791). See also 29 U.S.C. 794 (protecting only the "otherwise ___ ____ qualified individual with a disability"). In this case, the  ____________________ 2. We note that the statute was amended in 1990 to exclude (for purposes of 793 and 794 as these sections relate to employment) from the term "individual with a disability" "any individual who is an alcoholic whose current use of alcohol prevents such individual from performing the duties of the job in question or whose employment, by reason of such current alcohol abuse, would constitute a direct threat to property or the safety of others." 29 U.S.C. 706(8)(C)(v). -11- 11 "essential function[]" is showing up for work as scheduled, unless leave is authorized. Finally, regardless of which section of the Act applies, Leary must show at a minimum that his disability was a reason -- if not the sole reason -- for his discharge. Leary fails to establish either the second or the third element of his claim. It is the Navy's policy that leave will be granted only for bona fide reasons -- for example, a serious accident or illness or death in the employee's immediate family, or other circumstances over which the employee has no control. The Navy does not consider incarceration to be a bona fide reason for granting leave of any kind. To grant leave to employees serving time in jail, says the Navy, is to violate the public's confidence in the Navy and its personnel, the maintenance of which is one of the "Bedrock Standards of Conduct for Department of the Navy Personnel." Accordingly, the Human Resources Department of the Shipyard uniformly advises supervisors and employees that it is never appropriate to approve leave of any kind to cover the period of an employee's incarceration. The Navy defines excessive unauthorized absence as unauthorized absence for more than five consecutive work days. According to the Navy's "Schedule of Disciplinary Offenses and Recommended Remedies for Civilian Employees," an employee's excessive unauthorized absence -- twelve -12- 12 consecutive work days, in Leary's case -- may result in disciplinary action ranging from reprimand to removal, even for a first offense. It appears, then, that Leary was placed on unauthorized leave status, denied leave for incarceration, and discharged for excessive unauthorized absence, all in accordance with established Navy policies. Even assuming that Leary's incarceration was a "manifestation" of his alcoholism, cf. Teahan v. Metro-North ___ ______ ___________ Commuter R. Co., 951 F.2d 511, 515 (2d Cir. 1991) (assuming a _______________ causal relationship between employee's alcoholism and his absenteeism), cert. denied, 113 S. Ct. 54 (1992), we reject _____ ______ the argument that Leary should have been allowed to draw upon his accrued annual leave as a "reasonable accommodation" for his disability. First, Leary does not dispute the Navy's contention that he neither advised the Navy of his alcoholism nor sought accommodation of any kind until after he returned to duty following his incarceration. So far as the record shows, the Navy denied Leary's initial requests for leave without knowing the nature of the incident that resulted in his incarceration. We have said, in the context of a 504 suit, that an institution "can be expected to respond only to what it knows (or is chargeable with knowing)." Wynne v. _____ Tufts Univ. Sch. of Medicine, 976 F.2d 791, 795 (1st Cir. _____________________________ 1992), cert. denied, 113 S. Ct. 1845 (1993). _____ ______ -13- 13 Second, even if Leary had given the Navy sufficient notice of his need for accommodation, the Act neither prevents employers from holding "persons suffering from alcoholism . . . [to] reasonable rules of conduct," nor protects alcoholics from the consequences of their own misconduct. Little, 1 F.3d at 258 (quoting 43 Op. Att'y Gen. ______ No. 12, 1977 WL 17999 at *1). See also Copeland v. ___ ____ ________ Philadelphia Police Dep't, 840 F.2d 1139, 1149 (3d Cir. 1988) _________________________ ("a police department is justified in concluding that it cannot properly accommodate a user of illegal drugs within its ranks . . . ."), cert. denied, 490 U.S. 1004 (1989); _____ ______ Wilber v. Brady, 780 F. Supp. 837, 840 (D. D.C. 1992) (the ______ _____ Rehabilitation Act is not designed to "insulate [individuals with disabilities] from disciplinary actions which would be taken against any employee regardless of his status"). As we have observed, government entities have the discretionary authority to determine what policies are necessary to the execution of their assigned missions. "It is not the function of the federal courts to evaluate the appropriateness of agency employment standards but only to safeguard against 'arbitrary, capricious or otherwise unlawful' standards." Taub, 957 F.2d at 10 (citation ____ omitted). The Navy's no-leave-for-incarceration policy is none of these, given the importance of maintaining the public's confidence in the integrity of the armed forces. -14- 14 We hold that the Navy may reasonably apply its no- leave-for-incarceration policy to all of its employees, disabled and non-disabled alike. Because the Rehabilitation Act does not require otherwise, Leary is not a "qualified individual with a [disability]" who with reasonable accommodation could have fulfilled the "essential function[]" of attending work as scheduled. 29 C.F.R. 1614.203(a)(6). From our discussion above, it follows that Leary's disability was not a reason for his termination. The Navy placed Leary on unauthorized leave status before he ever sought to connect his incarceration to his alcoholism. The record leaves us with no doubt that the Navy applied its no- leave policy to Leary without regard to his disability, and ultimately discharged Leary because and only because of his excessive unauthorized absence.  Leary, however, argues that there is a question of material fact as to whether there is a sufficient nexus between his disability and the behavior that resulted in his removal to establish that he was discharged because of his disability. Disregarding arguendo Leary's failure to ________ establish that he is a qualified individual with a disability, and his failure to rebut the Navy's non- discriminatory justification for his discharge, and focusing our inquiry solely on the chain of events that preceded his removal, we find any causal nexus insufficient as a matter of -15- 15 law to establish a reasonable inference of discrimination. We would reach the same conclusion even if we were to apply the "but for" test of causation that Leary appropriates from our "mixed motive" labor relation cases. See Coletti's ___ _________ Furniture, Inc. v. NLRB, 550 F.2d 1292 (1st Cir. 1977). The _______________ ____ fact is that, notwithstanding his alcoholism and alcohol- related conduct, Leary would not have been incarcerated and placed in need of emergency leave had he been able to make bail. Leary's own brief states that "[h]e was incarcerated . . . because he was unable to post a . . . cash bail." It cannot be argued that the circumstances of incarceration and inability to make bail are uniquely or even specially associated with Leary's disability. Whatever relationship may exist between his alcoholism and the events giving rise to this case, Leary has not shown facts sufficient to defeat summary judgment with respect to his claim that he was removed from government service on the basis of his disability. Leary also argues that there is a genuine issue of material fact as to whether other non-disabled Navy employees were granted leave for incarceration or were simply reprimanded rather than removed for unauthorized absence. He refers to two employees who requested leave periods of five days or less, and a third employee whose eighteen-day leave request was denied, although he was not discharged. These -16- 16 cursory submissions do not set forth "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  IV. Conclusion IV. Conclusion __________ For the foregoing reasons, we affirm the district  -17- 17 court's order granting summary judgment for the defendant- appellee. -18- 18