# United States Court of Appeals
## For the First Circuit

No. 13-1379

TRACY BARTLETT,

Plaintiff, Appellant,

v.

DEPARTMENT OF THE TREASURY (INTERNAL REVENUE SERVICE),

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Howard, Ripple[*] and Thompson,
Circuit Judges.

Thomas J. Gleason, with whom Gleason Law Offices, P.C., was on brief for appellant.
Christine J. Wichers, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief for appellee.

April 4, 2014

---

[*] Of the Seventh Circuit, sitting by designation.

**RIPPLE, Circuit Judge**.  Tracy Bartlett filed a one-count complaint against her former employer, the Internal Revenue Service ("IRS"), in which she alleged that she had been constructively discharged in violation of the Rehabilitation Act, 29 U.S.C. § 701 et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.  The IRS moved to dismiss the complaint on the ground that Ms. Bartlett had not lodged her administrative complaint within forty-five days of the incident, as dictated by regulation.  Ms. Bartlett urged, however, that the doctrine of equitable tolling applied because she was not apprised of the regulatory deadline and because she was suffering from a mental illness.  The parties briefed the motion and also submitted additional documentation in support of their respective positions.  The district court granted the IRS's motion to dismiss, and Ms. Bartlett timely appealed.  Because Ms. Bartlett has not demonstrated that her circumstances warrant equitable tolling, we affirm the judgment of the district court.

**I**

**BACKGROUND**

Ms. Bartlett was a long-time employee of the IRS who, in 2009, was absent periodically from work due to her diagnosis with,

and treatment for, severe depression.[1]  On April 22, 2010, Ms. Bartlett was separated from her employment as a result of her inability to return to the workplace.

Following her separation from the IRS, Ms. Bartlett filed a one-count complaint in district court, in which she alleged that she had been constructively discharged on account of her disability in violation of the Rehabilitation Act and the ADA.  The IRS responded by filing a motion to dismiss on the ground that Ms. Bartlett had failed to contact an Equal Employment Opportunity ("EEO") Counselor within forty-five days of her allegedly discriminatory separation, as required by 29 C.F.R. § 1614.105(a) (2013).[2]  In its motion, the IRS also noted that, although the

---

[1]  Because Ms. Bartlett's action was decided on a motion to dismiss, "we accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor."  Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011).

[2]  29 C.F.R. § 1614.105(a) (2013) provides:

> (a)  Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
>
> (1)  An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

forty-five-day time limit was subject to equitable tolling, in order "'[t]o qualify for [equitable tolling], a complainant must allege and prove, at the least, not only that he had no reason to be aware of his employer's improper motivation when the putative violation occurred, but also that the employer actively misled him and that he relied on the (mis)conduct to his detriment.'"[3]  The IRS claimed that, "[i]n light of Plaintiff's letter dated April 9, 2010 -- <u>before</u> her separation -- in which she accused management of creating a hostile work environment, Plaintiff cannot show that she was unaware of the IRS's alleged improper motivation."[4]  The IRS attached to its motion the April 9 letter from Ms. Bartlett, as well as other documentation.

---

> (2) The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been [sic] known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

[3] R.9 at 3 (second alteration in original) (quoting <u>Jensen</u> v. <u>Frank</u>, 912 F.2d 517, 521 (1st Cir. 1990)).

[4] <u>Id.</u> at 3-4 (referencing R.9-1 at 4-5).

-4-

Ms. Bartlett filed an opposition to the motion to dismiss. In it, she noted that, "[p]rior to her separation from employment, [she] had sought to address the issue of what she perceived as [the] failure of the defendant to grant employment related benefits as it related to her medical condition."[5] She continued: "On October 8, 2010[,] the plaintiff, through counsel, sent correspondence to the EEOC claiming the defendant had discriminated against her on the basis of her handicap."[6] Ms. Bartlett argued that a court may waive or extend "time limits for equitable reasons when a person is prevented from timely filing because of illness or in other appropriate circumstances."[7] She claimed that such circumstances were present in her case because: (1) prior to her departure from the IRS, she had notified the IRS "of the specifics of the dispute from her perspective";[8] (2) the documents submitted in opposition to the motion, which set forth her diagnosis with, and hospitalization for, severe depression, "clearly established that [she] was significantly impaired by a mental health issue during the relevant time period";[9] and (3) "she was never notified of a 45 day time limit for commencing her

---

[5] R.12 at 1.

[6] Id. at 2.

[7] Id.

[8] Id. at 3.

[9] Id. at 4.

claim."[10]   Attached to her opposition were several exhibits, including an affidavit in which she stated that "[n]o one from the defendant ever informed me that I only had forty-five (45) days to file an employment discrimination claim,"[11] and other documents demonstrating that she had informed the IRS of the nature of her complaint and that she had been undergoing treatment for depression.[12]

With the court's permission, the IRS filed a reply brief in support of its motion to dismiss.  It noted first that

> [a] mental disability may serve as the basis for equitable tolling only if the plaintiff was "'[un]able to engage in rational thought and deliberate decision making sufficient to pursue [her] claim alone or through counsel.'" Meléndez-Arroyo v. Cutler-Hammer de P.R. Co., 273 F.3d 30, 37 (1st Cir. 2001) (alterations by the First Circuit) (quoting Nunnally v. MacCausland, 996 F.2d 1, 5 (1st Cir. 1993)).[13]

According to the IRS, the correspondence that Ms. Bartlett had attached to her opposition clearly established that, at least as of two weeks prior to her separation, "she was mentally competent; she could read; she could write (indeed, quite eloquently); and she was

---

[10]   Id.

[11]   R.12-1 at 2.

[12]   In her opposition, Ms. Bartlett also argued that she had "put the defendant on notice of the nature and substance of the dispute" before the filing deadline had passed. R.12 at 3-4.  She does argue on appeal that these actions rendered her complaint timely.

[13]   R.19 at 2 (second and third alterations in original).

-6-

able to understand what had happened and the consequences of her decision."[14] The IRS also addressed Ms. Bartlett's claim that "she was unaware of the 45-day deadline."[15] It stated: "The declaration of Damaris Ouellette attached hereto as Exhibit A, however, establishes that notices of the deadline were posted in Plaintiff's office since before 2010. Therefore, Plaintiff had constructive, if not actual, notice of the 45-day requirement."[16] Finally, the IRS argued that, although it was aware, prior to her departure, that Ms. Bartlett believed that she had been the victim of discrimination, it had not been advised within the forty-five-day window, as required by regulation, that she was going to pursue legal remedies.

In an order issued on February 4, 2013, the district court granted the IRS's motion to dismiss. The court observed that Ms. Bartlett had "admit[ted] that she failed to contact an EEO counselor within the mandated 45 days," and, therefore, her claim was barred unless equitable tolling applied.[17] The court then evaluated the four grounds on which Ms. Bartlett had argued that the limitations period applicable to her claim should be equitably tolled. First, the court noted that Ms. Bartlett had not alleged

---

[14] Id.

[15] Id. at 4.

[16] Id.

[17] R.25 at 3.

-7-

facts "show[ing] that her mental illness was so severe that she was unable to engage in the rational thought process and deliberate decision making necessary to pursue legal remedies in a timely fashion."[18]   Additionally, the district court rejected Ms. Bartlett's contention that the time should be tolled because the IRS failed to inform her of the forty-five-day contact period. The court observed that Ms. Bartlett had not pointed to affirmative misconduct on behalf of the IRS, nor had she alleged that the IRS failed to post the required EEO information--actions that might have warranted equitable tolling. Finally, the court held that the fact that the IRS was on notice of her potential claims did not toll the statute of limitations:  "Counsel cites no authority to suggest that the 45-day contact period is excused when defendant is previously put on notice of the nature of an employee's claim."[19]

Because Ms. Bartlett had not demonstrated that equitable tolling of the administrative filing requirement was warranted, the district court dismissed Ms. Bartlett's complaint.  Ms. Bartlett timely appealed.

---

[18]   Id. at 4.

[19]   Id. at 5.

## DISCUSSION

### A.  Requirement of Administrative Exhaustion

Before we turn to the outcome-determinative question--whether the district court properly dismissed Ms. Bartlett's action on the ground that the forty-five-day limitation set by regulation for commencing administrative review of her claim was not tolled--we must place that question in proper analytical and practical context by addressing an antecedent issue: whether Ms. Bartlett was required to exhaust administrative remedies prior to filing an action under the Rehabilitation Act.[20]  This question is "antecedent" to the tolling issue because the tolling of an administrative filing requirement only becomes an issue if the plaintiff must exhaust administrative remedies before proceeding

---

[20]  Ms. Bartlett alleged in her complaint that the IRS's actions violated the Rehabilitation Act and the ADA.  See R.1 at 2 ("The acts and omissions of the defendant as described above[] constitute discrimination on the basis of handicap, in violation of 29 U.S.C. Section 701, et seq. and 42 U.S.C. Section 12101, et seq.").  However, the United States is explicitly excluded from the ADA's definition of "employer," 42 U.S.C. § 12111(5)(B)(i), and, consequently, as a federal employee, Ms. Bartlett only may proceed under the Rehabilitation Act.  See Field v. Napolitano, 663 F.3d 505, 510 n.6 (1st Cir. 2011).

with a Rehabilitation Act claim.[21]  This fundamental issue remains an open question in this circuit.

Whether, or, more appropriately, under what circumstances, a plaintiff must exhaust administrative remedies before filing an action under the Rehabilitation Act presents a statutory interpretation question that is grounded in the manner in which Congress provided for a private cause of action under the Rehabilitation Act.  The Rehabilitation Act was enacted in 1973, and among its original provisions was a requirement that federal agencies adopt affirmative action plans for handicapped individuals.  29 U.S.C. § 791(b) (often referred to in the case law as section 501 of the  Rehabilitation Act).[22]  Another provision,

---

[21]    Indeed, we have previously determined that, where the requirement applies, "a plaintiff's unexcused failure to exhaust administrative remedies effectively bars the courthouse door." Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005).  One of exhaustion's "key components"--and the one with which we must ultimately grapple--is "timely" compliance with procedural requirements.  See id.

[22]  29 U.S.C. § 791(b) provides:

> (b) Federal agencies; affirmative action program plans
>
> Each department, agency, and instrumentality (including the United States Postal Service and the Postal Regulatory Commission) in the executive branch and the Smithsonian Institution shall, within one hundred and eighty days after September 26, 1973, submit to the Commission and to the Committee an affirmative action program plan for the hiring, placement, and advancement of individuals with disabilities in such

-10-

29 U.S.C. § 794(a) (often referred to in the case law as section 504 of the Rehabilitation Act),[23] prohibited federally funded

>department, agency, instrumentality, or Institution. Such plan shall include a description of the extent to which and methods whereby the special needs of employees who are individuals with disabilities are being met. Such plan shall be updated annually, and shall be reviewed annually and approved by the Commission, if the Commission determines, after consultation with the Committee, that such plan provides sufficient assurances, procedures and commitments to provide adequate hiring, placement, and advancement opportunities for individuals with disabilities.

[23] 29 U.S.C. § 794 provides in relevant part:

>(a) Promulgation of rules and regulations
>
>No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance <u>or under any program or activity conducted by any Executive agency or by the United States Postal Service</u>. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth day after the date on which such regulation is so submitted to such committees.

29 U.S.C. § 794(a) (emphasis added). As will be discussed below,

programs or activities from excluding handicapped individuals from participating in the program, or denying benefits to handicapped individuals, "solely by reason of her or his disability." The statute did not provide a private right of redress for violation of either section. Nevertheless, "all courts that considered the issue found that section 504 established a private cause of action for handicapped persons subjected to discrimination by recipients of federal funds"; however, "a private cause of action founded on handicap discrimination was not recognized upon section 501 as against a federal government employer." Prewitt v. U.S. Postal Serv., 662 F.2d 292, 302 (5th Cir. 1981).

Congress remedied this omission in 1978. As the Third Circuit noted in Spence v. Straw, 54 F.3d 196, 199 (3d Cir. 1995), however, it did so in a "less than artful manner," by adopting overlapping amendments from the House and the Senate. "The Senate's contribution focused on provision of a new section in the Rehabilitation Act--section 505, codified at 29 U.S.C. § 794a." Id. The new section provided that, with respect to 29 U.S.C. § 791 governing federal employers, "[t]he remedies, procedures, and rights set forth in [Title VII] of the Civil Rights Act of 1964 . . . shall be available" to any aggrieved employee or

the highlighted language, and what follows, was added by amendment in 1978.

-12-

applicant for employment.  29 U.S.C. § 794a(a)(1).[24]  The Senate also codified the cause of action--already recognized by most courts--for those aggrieved by providers and recipients of federal assistance.  With respect to those claims, "[t]he remedies, procedures, and rights set forth in [T]itle VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.," were available to aggrieved parties.  29 U.S.C. § 794a(a)(2).[25]

---

[24]  Section 794a(a)(1) of Title 29 provides:

(a)(1)  The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e-5(f) through (k)) (and the application of section 706(e)(3) (42 U.S.C. 2000e-5(e)(3)) to claims of discrimination in compensation), shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy.

[25]  Section 794a(a)(2) of Title 29 provides:

The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e-5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act

-13-

The House, however, took a different approach. Because courts had recognized a private cause of action under § 794 (section 504 of the Rehabilitation Act), the House merely "'extended section 504's proscription against handicap discrimination to "any program or activity conducted by an Executive agency or by the United States Postal Service."'" Spence, 54 F.3d at 199 (quoting Prewitt, 662 F.2d at 302).[26] As noted by the Fifth Circuit, "[t]he joint House-Senate conference committee could have chosen to eliminate the partial overlap between the two provisions, but instead the conference committee, and subsequently Congress as a whole, chose to pass both provisions, despite the overlap." Prewitt, 662 F.2d at 304. In taking this action, the Fifth Circuit concluded:

> Congress clearly recognized both in section 501 and in section 504 that individuals now have a private cause of action to obtain relief for handicap discrimination on the part of the federal government and its agencies. The amendments to section 504 were simply the House's answer to the same problem that the Senate saw fit to resolve by strengthening section 501.

Id.

The manner in which Congress amended the Rehabilitation Act, however, created an "apparently incongruent enforcement

---

by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

[26] See supra note 23.

scheme." Spence, 54 F.3d at 199.  According to the terms of the amended Rehabilitation Act, federal agencies could "be sued for violation of either section 501 or 504 of the Act." Id.  If a federal employee sues under § 791 (section 501 of the Rehabilitation Act), Title VII's remedies and administrative processes apply.  "Thus, a party is barred from suing a federal agency for violation of section 501 [29 U.S.C. § 791] if he or she has failed to exhaust administrative remedies under Title VII." Id. at 200.  However, an aggrieved federal employee also may sue for a violation of § 794, which may be redressed through the remedies and procedures set forth in Title VI of the Civil Rights Act, for which exhaustion is not required.  See id.[27]

---

[27]    The Seventh Circuit addressed this incongruity in McGuinness v. United States Postal Service, 744 F.2d 1318 (7th Cir. 1984).  It stated that the plaintiff could not "avoid dismissal of the suit as premature by arguing that it is really a suit not under section 505(a)(1) of the Rehabilitation Act but under section 504, 29 U.S.C. § 794." Id. at 1321.  The court recognized that "section 504 ha[d] been held applicable to employment discrimination as well as other forms of discrimination against the handicapped by recipients of federal money." Id.  Nevertheless, it observed that it was "unlikely that Congress, having specifically addressed employment of the handicapped by federal agencies (as distinct from employment by recipients, themselves nonfederal, of federal money) in section 501, would have done so again a few sections later in section 504." Id.  According to our colleagues in the Seventh Circuit,

> it would make no sense for Congress to provide (and in the very same section--505(a)) different sets of remedies, having different exhaustion requirements, for the same wrong committed by the same employer; and there is no indication that Congress wanted to do this--as of course it could do regardless of

-15-

Although courts have differed slightly in their reasoning, every circuit court to address the issue directly has determined that a <u>federal</u> <u>employee</u> who brings an action under the Rehabilitation Act must exhaust administrative remedies before proceeding to court.  See <u>Spence</u>, 54 F.3d at 201 (collecting cases).[28]

_____

            what might seem sensible to us--when it added
            section 505 in 1978.

<u>Id.</u>  That court went on to determine that it did not have to address whether federal employees could bring a cause of action under only § 791 or under both § 791 and § 794, because, in either situation, it was Congress's intent that federal employees exhaust the administrative remedies contained in Title VII.  <u>Accord</u> <u>Boyd</u> v. <u>U.S. Postal Serv.</u>, 752 F.2d 410, 413 (9th Cir. 1985) ("[W]e agree with the Seventh Circuit that 'it is unlikely that Congress, having specifically addressed employment of the handicapped by federal agencies (as distinct from employment by recipients, themselves nonfederal, of federal money) in section 501, would have done so again a few sections later in section 504.'" (quoting <u>McGuinness</u>, 744 F.2d at 1321)).

    [28]  <u>See also</u> James Lockhart, Annotation, <u>To What Extent Are Federal Entities Subject to Suit under § 504(a) of the Rehabilitation Act (29 U.S.C.A. § 794(a)), Which Prohibits any Program or Activity Conducted by any Executive Agency or the Postal Service from Discriminating on Basis of Disability</u>, 146 A.L.R. Fed. 319 § 5 (1998).  Among the authorities cited are: <u>Doe</u> v. <u>Garrett</u>, 903 F.2d 1455, 1461 (11th Cir. 1990) (holding that "private actions against federal government employers under the Act, whether brought under section 791 or 794, must satisfy the requirement of exhaustion of administrative remedies in the manner prescribed by section [794a(a)(1) ] and thus by Title VII" (alteration in original) (internal quotation marks omitted)); <u>Morgan</u> v. <u>United States Postal Service</u>, 798 F.2d 1162, 1164-65 (8th Cir. 1986) (requiring exhaustion of administrative remedies for federal employee even when he proceeds under § 504); <u>Boyd</u>, 752 F.2d at 413 (following <u>McGuinness</u> and holding "that section 501 is the exclusive remedy for discrimination in employment by the Postal Service on the basis of handicap"); <u>Smith</u> v. <u>United States Postal Service</u>, 742 F.2d 257, 262 (6th Cir. 1984) (holding that the 1978

-16-

Although district courts within our own circuit similarly have held that exhaustion is required for federal employees,[29] and, in at least one case, we have suggested the same,[30] we never have addressed directly whether a federal employee seeking redress under the Rehabilitation Act is limited to proceeding under § 791 (section 501 of the Rehabilitation Act) and, if not, whether she must nonetheless exhaust administrative remedies.

We noted this "procedural wrinkle" in Leary v. Dalton, 58 F.3d 748, 751 (1st Cir. 1995), in which a federal employee had brought a Rehabilitation Act claim under 29 U.S.C. § 794 (section 504 of the Rehabilitation Act). We stated:

> Although the district court decided this case under § 504 of the Rehabilitation Act, 29 U.S.C. § 794 (prohibiting disability discrimination by non-federal recipients of federal funds), Leary actually invoked § 501 of the Act, 29 U.S.C. § 791, in his complaint.

Amendments to the Rehabilitation Act "mandate exhaustion as a prerequisite to such claims, regardless of whether they are brought under section 501 or section 504"); and Prewitt v. United States Postal Service, 662 F.2d 292, 304 (5th Cir. 1981) ("[I]n order to give effect to both the House and the Senate 1978 amendments finally enacted, we must read the exhaustion of administrative remedies requirement of section 501 into the private remedy recognized by both section 501 and section 504 for federal government handicap discrimination.").

[29] See Clark v. U.S. Postal Serv., 592 F. Supp. 631, 632 (D. Mass. 1984).

[30] See Stoll v. Principi, 449 F.3d 263, 266 (1st Cir. 2006) ("The lodging of either a formal appeal with the Board or a formal complaint with the agency demarcates the point of no return. From that point forward, the complainant must exhaust her claim in the chosen forum." (citation omitted)).

Section 501(b) imposes an affirmative duty on every "department, agency, and instrumentality . . . in the executive branch" of the federal government to provide adequate hiring, placement, and advancement opportunities for individuals with disabilities. Some circuits view § 501, accordingly, as the exclusive right of action for federal employees who suffer disability discrimination in the course of their direct employment. Other circuits, ours included, have permitted such claims to be brought under both § 501 and § 504.

The differences between the two sections may be significant in some cases (though not this one, as we shall explain). Not only is it unclear whether the right of action under § 504 overlaps with that in § 501, it is also unclear, in light of recent amendments to the Rehabilitation Act, whether the two sections require the same showing of causation. . . .

We therefore regard the applicability of § 504 and its sole causation test in this federal employment suit as an open question; but one that we need not reach here. Leary agrees on appeal that his claim arises under § 504, and that he bears the burden of demonstrating that he was terminated "solely by reason of" his disability.

Leary, 58 F.3d at 751-52 (first alteration in original) (emphasis added) (citations omitted).[31] Although Leary discussed the

---

[31] In one recent case in which the issue of exhaustion was not raised, we stated in passing that the Rehabilitation Act does not require exhaustion. See Farris v. Shinseki, 660 F.3d 557, 562 n.5 (1st Cir. 2011). Tracing back that statement to its origin (Farris relies on Prescott v. Higgins, 538 F.3d 32, 44 (1st Cir. 2008), which in turn cites Brennan v. King, 139 F.3d 258, 268 n.12 (1st Cir. 1998)), however, it is clear that the statement concerns a claim brought by a non-federal employee under § 794 (section 504 of the Rehabilitation Act), not § 791 (section 501 of the Rehabilitation Act). See Brennan, 139 F.3d at 268 n.12 (addressing claims brought by university professor and stating that "[t]he Rehabilitation Act derives its procedural requirements from Title

-18-

difference in causation standards, it did not discuss the disparity in exhaustion requirements; indeed, it made no mention of exhaustion at all.

The court's methodology in Leary counsels that we need not resolve, in the present case, whether federal employees, proceeding exclusively under § 794, must exhaust administrative remedies. Here, when the Government raised in the district court that Ms. Bartlett had not complied with the forty-five-day administrative exhaustion requirement, she never asserted that she was exempt from the exhaustion requirement because it was inapplicable to the provision on which she was resting her claim. At the very least, by failing to raise the issue in the district court, she has forfeited any argument that exhaustion of remedies under the Rehabilitation Act was not required in this case. See Farris v. Shinseki, 660 F.3d 557, 562 n.5 (1st Cir. 2011) (forgoing a determination of whether the plaintiff was required to exhaust administrative remedies because the issue had not been raised in the district court or briefed on appeal).

## B. Equitable Tolling

The central issue raised by Ms. Bartlett's appeal is whether the district court should have equitably tolled the forty-

_____

VI, which does not have an exhaustion requirement").

five-day time limit, set by regulation,[32] within which she was required to commence the administrative complaint procedure for her allegedly discriminatory constructive discharge.  In the context of litigation initiated by federal employees, we have noted that "administrative exhaustion 'is a condition to the waiver of sovereign immunity'" and, therefore, "'must be strictly construed.'"  Id. at 563 (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 94 (1990)).  It is "[o]nly in exceptional circumstances" that equitable tolling will extend a filing deadline.  Id. (internal quotation marks omitted).  To this end, "the heavy burden" of "prov[ing] entitlement to equitable relief lies with the complainant."  Id.

Generally speaking, "[e]quitable tolling suspends the running of the limitations period 'if the plaintiff, in the exercise of reasonable diligence, could not have discovered information essential to [his claim].'"  Ortega Candelaria v. Orthobiologics LLC, 661 F.3d 675, 679-80 (1st Cir. 2011) (alteration in original) (quoting Barreto-Barreto v. United States, 551 F.3d 95, 100 (1st Cir. 2008)).[33]  In making a determination

---

[32] See supra note 2.

[33]  We have observed that "[e]quitable tolling casts a wider net than [the related doctrine of] equitable estoppel."  Ortega Candelaria v. Orthobiologics LLC, 661 F.3d 675, 679 (1st Cir. 2011) (internal quotation marks omitted). In contrast to equitable tolling,

> [e]quitable estoppel applies when a plaintiff who

-20-

whether equitable tolling should apply in the context of a claim

brought under the Age Discrimination in Employment Act ("ADEA"), we

have instructed that,

> where a plaintiff is claiming excusable ignorance of the filing deadline, we believe a court should initially determine whether the plaintiff had either actual or constructive knowledge of his rights under the ADEA. Actual knowledge occurs where an employee either learns or is told of his ADEA rights, even if he becomes only generally aware of the fact that there is a statute outlawing age discrimination and providing relief therefor. . . . Constructive knowledge, on the other hand, is "attributed" to an employee in situations where he has retained an attorney, or where an employer has fulfilled his statutory duty by conspicuously posting the official EEOC notices that are designed to inform employees of their ADEA rights. . . .
>
> <u>If the court finds that the plaintiff knew, actually or constructively, of his ADEA rights, ordinarily there could be no equitable tolling based on excusable ignorance</u>.

<u>Kale</u> v. <u>Combined Ins. Co. of Am.</u>, 861 F.2d 746, 753 (1st Cir. 1988)

(emphasis added) (citations omitted).

---

knows of his cause of action reasonably relies on the defendant's conduct or statements in failing to bring suit. In order to demonstrate entitlement to equitable estoppel, a plaintiff must show evidence of the defendant's improper purpose or his constructive knowledge of the deceptive nature of his conduct . . . in the form of some definite, unequivocal behavior . . . fairly calculated to mask the truth or to lull an unsuspecting person into a false sense of security.

<u>Id.</u> (second and third alterations in original) (citation omitted) (internal quotation marks omitted).

If, however, the plaintiff did not have actual knowledge, or if the employer failed to post the required notices, then "[t]he court should also assess any countervailing equities <u>against</u> the plaintiff." <u>Id.</u> (emphasis added). Specifically, the court should ask the following questions:

> [D]id he diligently pursue his claim, was his ignorance of his rights reasonable under the circumstances, and would allowing equitable tolling still fulfill the basic purposes behind the limited filing period--namely, providing the government an opportunity to conciliate while the complaint is fresh and giving early notice to the employer of possible litigation.

<u>Id.</u> (citations omitted). "Finally, even if the court finds that the above factors call for equitable tolling, it must then take account of the degree to which delay prejudices the defendant." <u>Id.</u>

**1.**

Before the district court, Ms. Bartlett maintained that she did not have actual knowledge of the forty-five-day deadline. Her argument was supported by an affidavit, in which she states: "No one from the defendant ever informed me that I only had forty-five (45) days to file an employment discrimination claim."[34] As noted above, however, ordinarily there cannot be equitable tolling based on excusable ignorance if the plaintiff had <u>either</u> actual or

---

[34] R.12-1 at 2.

constructive knowledge of her statutory rights. Kale, 861 F.2d at 753. Although Ms. Bartlett alleged that she lacked actual knowledge of the filing deadline--and supported that allegation by affidavit--she did not challenge the IRS's assertion, supported by the declaration of Damaris Ouellette, that it had complied with the posting requirements.[35] Ms. Bartlett, therefore, has not carried her burden of showing a lack of constructive knowledge of the filing requirements.

In her brief before this court, Ms. Bartlett does not contest that the IRS's postings sufficed to establish her constructive knowledge of the filing deadlines. Instead, she maintains that the district court erred when it decided the issue of notice on a motion to dismiss. She argues that we have held that the issue of constructive notice is one of fact that cannot be decided on a motion to dismiss. She relies on Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41 (1st Cir. 2005), to support her position.

In Mercado, employees filed Title VII administrative charges after the three-hundred-day deadline had passed, and their

---

[35] Federal agencies, as part of their implementation of "affirmative program[s] to promote equal opportunity and to identify and eliminate discriminatory practices and policies," must "[m]ake written materials available to all employees and applicants informing them of the variety of equal employment opportunity programs and administrative and judicial remedial procedures available to them and prominently post such written materials in all personnel and EEO offices and throughout the workplace." 29 C.F.R. § 1614.102(a) & (b)(5).

employer, Ritz-Carlton, moved to dismiss on the ground that the complaints were untimely.  In response, the plaintiffs "claimed that Ritz-Carlton was barred from asserting timeliness as a defense because the hotel [had] failed to comply with EEOC regulations requiring employers to post notices advising employees of their legal rights relating to employment discrimination."  Id. at 44.  We held that "[h]ere, where appellants have asserted that no informational notices were posted and that they had no knowledge of their legal rights until informed by their attorney, they have met the threshold requirements for avoiding dismissal of their Title VII suit."  Id. at 48 (footnote omitted).

Ms. Bartlett maintains that Mercado stands for the proposition that, "where the issue of notice is disputed[,] a plaintiff has met the threshold requirements for avoiding dismissal."  Appellant's Br. 13.  We agree, but that is not what happened here.  Ms. Bartlett never has alleged that the IRS failed to post the required notices.  Instead, she asserts that an IRS employee never affirmatively informed her of the filing deadline.[36]  This assertion contests the issue of actual knowledge, but not constructive knowledge.[37]

---

[36]  See R.12-1 at 2.

[37]  We are unaware, however, of any regulation, statute or case law that imposes such an obligation on Government agencies, and Ms. Bartlett has pointed to none.

Ms. Bartlett also suggests, without explicitly arguing, that the district court's ruling was more akin to summary judgment than to dismissal for failure to state a claim. See Appellant's Br. 14-15. Under the Federal Rules of Civil Procedure, a district court must advise the parties if, in ruling on a motion to dismiss, it is considering materials outside the pleadings:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). Here, the district court did not formally convert the IRS's motion to dismiss into a motion for summary judgment, despite the fact that the motion was accompanied by other materials.

The district court's failure to convert the motion, however, does not require reversal. We have made it clear that we "do[] not mechanistically enforce the requirement of express notice of a district court's intention to convert a Rule 12(b)(6) motion into a motion for summary judgment." Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000). "Instead, we treat any error in failing to give express notice as harmless when the opponent has received the affidavit and materials, has had an opportunity to respond to them, and has not controverted their accuracy." Id. (internal quotation marks omitted). Here,

-25-

Ms. Bartlett not only responded to the IRS's motion to dismiss, but attached several documents to her response. Furthermore, in her briefing on appeal, Ms. Bartlett does not argue that she was denied an opportunity to respond, nor does she suggest that there are other affidavits or documents that she would have submitted to the district court if she had been given formal notice that the court was converting the IRS's motion to a motion for summary judgment. Consequently, the failure by the district court to formally convert the motion to dismiss into a motion for summary judgment was harmless.[38]

## 2.

Ms. Bartlett also maintains that the filing deadline should be tolled because she was suffering from mental illness. We have recognized that mental illness may toll the time to file an administrative claim of discrimination, but only if the plaintiff has "show[n] that the mental disability was so severe that the plaintiff was '[un]able to engage in rational thought and deliberate decision making sufficient to pursue [her] claim alone or through counsel.'" Mélendez-Arroyo v. Cutler Hammer de P.R. Co., 273 F.3d 30, 37 (1st Cir. 2001) (second and third alterations

---

[38] Because Ms. Bartlett had constructive notice of the filing requirement, we do not have to engage in the second step of the equitable tolling analysis: "assess[ing] any countervailing equities against the plaintiff." Kale v. Combined Ins. Co. of Am., 861 F.2d 746, 753 (1st Cir. 1988).

in original) (quoting <u>Nunnally</u> v. <u>MacCausland</u>, 996 F.2d 1, 5 (1st Cir. 1993)).  In this case, the district court applied this standard and determined that equitable tolling was not appropriate because Ms. Bartlett had not argued that her illness had resulted in the necessary level of incapacity.[39]

On appeal, Ms. Bartlett does not maintain that her illness rendered her unable to engage in rational thought and deliberate decision making.  Indeed, she explicitly alleges in her Complaint that she "performed her duties and responsibilities competently and her disability did not otherwise interfere with her ability to perform her job."  R.1 at 2.  Nowhere does Ms. Bartlett allege that her mental condition--which she says did not affect her job performance--worsened after her separation from employment. She maintains only that the district court applied the incorrect legal standard in determining whether the time limit should be tolled based on mental illness.  She argues that our case law "does not stand for the proposition that in an equitable tolling analysis a mental illness must be so severe as to deprive the sufferer of the rational thought necessary to protect their legal rights." Appellant's Br. 14.  Rather, she claims that the standard we articulated in <u>Lopez</u> v. <u>Citibank</u>, 808 F.2d 905 (1st Cir. 1987)--a case-law antecedent to <u>Mélendez-Arroyo</u>--"is a very narrow one" and

---

[39]  <u>See</u> R.25 at 4 ("Here, plaintiff does not contend that her mental illness was so debilitating that she was unable to meet the 45-day deadline.").

is based on the unique facts that were before the court. Appellant's Br. 14.

We do not believe that the district court's determination runs afoul of Lopez. In Lopez, the plaintiff filed his Title VII action eighteen months after he had been notified that the EEOC had dismissed his charge, approximately fifteen months after the ninety-day statute of limitations had run. The plaintiff maintained, however, that equitable tolling should be applied because "he was mentally incapacitated during much or all of the relevant eighteen-month period." Lopez, 808 F.2d at 906. In evaluating this claim, we noted that "there is no absolute rule that would require tolling whenever there is mental disability." Id. We observed that "[t]he federal courts have taken a uniformly narrow view of equitable exceptions to Title VII limitations periods." Id. (internal quotation marks omitted).[40] We concluded:

---

[40] This is still the case. See, e.g., Wilkie v. Dep't of Health & Human Servs., 638 F.3d 944, 950 (8th Cir. 2011) (noting that "the standard for tolling due to mental illness is a high one" and reiterating that "a plaintiff seeking tolling on the ground of mental incapacity must come forward with evidence that a mental condition prevented him from understanding and managing his affairs generally and from complying with the deadline he seeks to toll" (internal quotation marks omitted)); Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000) (holding that a plaintiff's "conclusory and vague claim, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights, is manifestly insufficient to justify any further inquiry into tolling"); Miller v. Runyon, 77 F.3d 189, 191 (7th Cir. 1996) (refusing "to depart from the traditional rule that mental illness tolls a statute of limitations only if the illness in fact prevents the sufferer from managing his affairs and thus from understanding his legal rights

> Without an absolute rule in his favor, appellant cannot prevail here. Appellant was represented by counsel during his period of illness, and counsel pursued appellant's discrimination claim before the EEOC. It thus seems unlikely that appellant's illness deprived his counsel of the knowledge or consent needed to file a court complaint; it is more likely that counsel knew plaintiff wished to pursue his legal remedies and knew (or should have known) about the relevant limitations period. And, appellant has alleged no specific facts that would show the contrary. In such circumstances, we believe a federal court should assume that the mental illness was not of a sort that makes it equitable to toll the statute--at least absent a strong reason for believing the contrary.

Id. at 907.

We agree with Ms. Bartlett that, in Lopez, the fact that the plaintiff had retained counsel factored into our analysis. However, nothing in Lopez suggests a more relaxed standard for assessing mental incapacity in the context of equitable tolling. See id. at 906. Morever, since Lopez, we have said:

> Both cases, Lopez and Nunnally, said that equitable tolling was available in principle but only if the plaintiff showed that the mental disability was so severe that the plaintiff was "[un]able to engage in rational thought and deliberate decision making sufficient to pursue [her] claim alone or through counsel." [Nunnally,] 996 F.2d at 5. Lopez rejected the claim because the plaintiff had been represented by counsel, 808 F.2d at 907; Nunnally thought a hearing required where the plaintiff showed that she was "nearly a street person" with a probable diagnosis of paranoid schizophrenia, 996 F.2d at 6.

---

and acting upon them").

-29-

Mélendez-Arroyo, 273 F.3d at 37 (emphasis added). In Mélendez-Arroyo, we made it "clear that merely to establish a diagnosis such as severe depression is not enough." Id. at 38. Instead, a plaintiff must show that she is, because of her disability, "[un]able to engage in rational thought and deliberate decision making sufficient to pursue [her] claim alone or through counsel." Id. at 37 (alterations in original) (quoting Nunnally, 996 F.2d at 5); see also Miller v. Runyon, 77 F.3d 189, 191 (7th Cir. 1996) (stating "the traditional rule [is] that mental illness tolls a statute of limitations only if the illness in fact prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them").

The documentation that Ms. Bartlett submitted to the district court fell far short of what is necessary to "raise[] a factual dispute about her capacity that could not be resolved solely on the papers." Id. at 38. Ms. Bartlett never averred, nor does any of her evidence point to the conclusion, that her depression deprived her of the ability to engage in rational thought or deliberate decision making. She maintains only that "she was experiencing a severe mental illness," Appellant's Br. 17, but, under our case law, "establish[ing] a diagnosis such as severe depression is not enough," Mélendez-Arroyo, 273 F.3d at 38. Rather, the alleged severe mental illness must be marked by a significantly reduced capacity to make rational decisions. On

appeal Ms. Bartlett does not argue that she could come forward with evidence that her depression rendered her unable to "understand[] h[er] legal rights and act[] upon them," <u>Miller</u>, 77 F.3d at 191, but was deprived of the opportunity to do so.[41]

Because Ms. Bartlett has not alleged that she was mentally incapacitated during the forty-five-day filing period and has not argued that she could come forward with evidence establishing such incapacity, she has not made the necessary showing to establish that equitable tolling should be applied to save her untimely administrative action.

## Conclusion

For the reasons set forth above, we affirm the judgment of the district court.

AFFIRMED

---

[41] We do not imply, of course, that severe depression never could meet that standard. We simply observe that no such showing has been made here.